# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RUSSELL ROBERSON,

        Defendant-Appellant.

UNPUBLISHED
June 2, 2016


No. 324668
Wayne Circuit Court
LC No. 14-005563-FC

---

Before: RONAYNE KRAUSE, P.J., and SAWYER and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of assault with intent to commit murder, MCL 750.83, felon in possession of a firearm, MCL 750.224f, carrying a concealed weapon (CCW), MCL 750.227, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant to concurrent prison terms of 15 to 25 years for the assault conviction, two to five years for the felon-in-possession conviction, 1 to 1-1/2 years for the CCW conviction, and a consecutive two-year term of imprisonment for the felony-firearm conviction. On appeal, defendant claims ineffective assistance of counsel and error in the scoring of his guidelines. We affirm defendant's convictions, but remand for further proceedings in accordance with *Lockridge*.[1]

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues, through both appointed appellate counsel and in a pro se brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, that he is entitled to a new trial due to ineffective assistance of counsel. Defendant failed to raise an ineffective assistance of counsel issue in the trial court.[2] Therefore, review of this issue is limited to errors apparent from the record. *People v Rodriguez,* 251 Mich App 10, 38; 650 NW2d 96 (2002); *People v Snider,* 239 Mich App 393, 423; 608 NW2d 502 (2000). Effective assistance of

---

[1] *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

[2] Although defendant did file a motion to remand to address the issues raised in appellate counsel's brief, that motion was denied. *People v Roberson*, unpublished order of the Court of Appeals, entered August 4, 2015 (Docket No. 324668).

counsel is presumed and the defendant bears a heavy burden of proving otherwise. *People v Eloby (After Remand)*, 215 Mich App 472, 476; 547 NW2d 48 (1996). To establish ineffective assistance of counsel, defendant must "show both that counsel's performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have been different had it not been for counsel's error." *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007). Defendant must also show that "the result that did occur was fundamentally unfair or unreliable." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). "[A] reviewing court must conclude that the act or omission of the defendant's trial counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission." *People v Gioglio (On Remand)*, 296 Mich App 12, 22-23; 815 NW2d 589 (2012) vacated in part on other grounds 493 Mich 864 (2012).

Defendant argues that trial counsel was ineffective for failing to call four witnesses and impeach one prosecution witness. Defendant also argues that the cumulative effect of counsel's trial errors warrant relief on appeal.

## A. FAILURE TO CALL WITNESSES AND PRESENT EVIDENCE

"Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999) (citations omitted). However, the trial strategy must be sound, and "a court cannot insulate the review of counsel's performance by [simply] calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "A sound trial strategy is one that is developed in concert with an investigation that is adequately supported by reasonable professional judgments." *People v Grant*, 470 Mich 477, 486; 684 NW2d 686 (2004). "Ineffective assistance of counsel may be established by the failure to call witnesses only if the failure deprives defendant of a substantial defense." *People v Julian*, 171 Mich App 153, 159; 429 NW2d 615 (1988). Likewise, "[d]efense counsel's failure to present certain evidence will only constitute ineffective assistance of counsel if it deprived defendant of a substantial defense." *People v Dunigan*, 299 Mich App 579, 589; 831 NW2d 243 (2013). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly,* 186 Mich App 524, 526; 465 NW2d 569 (1990).

## 1. LATOYA SMITH

Defendant first argues that counsel was ineffective for failing to investigate what LaToya Smith knew and to call her as a witness at trial. The record does not show that counsel made a serious error by failing to interview LaToya and call her as a witness. First, LaToya was a codefendant represented by independent counsel. There is nothing in the record to indicate that her lawyer would have consented to an interview by defendant's counsel at any time before the court directed a verdict in her favor. See MRPC 4.2. Even assuming LaToya would have spoken to defendant's counsel, there is nothing in the record to indicate whether he did or did not speak to her about what she knew or whether she admitted to having evidence favorable to

-2-

defendant. Defendant has presented an affidavit from LaToya regarding the testimony she would have offered. But apart from the fact that exculpatory post-trial statements offered by a codefendant who declined to testify at trial are considered untrustworthy and unreliable, *People v Terrell*, 289 Mich App 553, 565-566; 797 NW2d 684 (2010), the affidavit is not part of the lower court record. Further, because it is "impermissible to expand the record on appeal," *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999), it cannot be considered on appeal. *People v Seals*, 285 Mich App 1, 20-21; 776 NW2d 314 (2009).

Even if we were to consider LaToya's affidavit to determine whether remand for a *Ginther*[3] hearing is appropriate, it shows only that LaToya would have testified for defendant had she known she could do so *after the court directed a verdict*, i.e., at the close of the prosecutor's proofs. This does not show that counsel's chosen trial strategy of proceeding without LaToya as a defense witness was unreasonable, given that he could not have known that the proceedings against her would conclude in her favor, much less conclude in time for her to testify for defendant. Further, LaToya does not state that defendant's counsel knew that she was willing to testify at that time, let alone that counsel had any knowledge of the testimony she would offer. LaToya's affidavit does not establish that defense counsel's failure to call her as a witness fell below an objective standard of reasonableness.

## 2. LATOYA'S DAUGHTERS

There is evidence in the record that Angel and her sister Amirrah were present during the offense. Defendant contends that counsel was ineffective for failing to call them to testify as well. There is nothing in the record to indicate that defense counsel did or did not talk to them about what they knew or whether they admitted to having evidence favorable to defendant. Defendant relies on affidavits from the girls, who state that defense counsel did not interview them before trial and that they could have testified that defendant was not present during the fight, among other things. Again, these affidavits are not part of the lower court record and cannot be considered on appeal. *Seals*, 285 Mich App at 20-21; *Powell*, 235 Mich App at 561 n 4.

Even if we were to consider the girls' affidavits, they do not support a finding that counsel was ineffective for failing to call them to testify at trial. Both girls state that they could have testified that defendant was not at their house and was not present when Thornton was shot. However, it is not reasonably likely that the girls' bare assertion that defendant was not present, in the absence of any other information in the record indicating that defendant was somewhere else would have altered the outcome of the proceedings, given that they would not be disinterested witnesses, that three prosecution witnesses testified that defendant was present, and that Thornton, who did not know defendant and had never seen him before, identified him as one of the men who shot him and was able to identify him in a lineup. The remainder of the girls' proposed testimony relates to wholly collateral matters, such as whether they were still friends with Thornton's niece, Tytiana Hobbs on May 17, why they stopped being friends with Tytiana, whether all the people on the street came in response to LaToya's call, and whether Amirrah

---

[3] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

rather than LaToya punched Tytiana. While such testimony would impeach certain aspects of the prosecution witnesses' testimony, their testimony was impeached in other ways yet the jury still chose to believe it. Therefore, defendant has not shown that he was prejudiced by counsel's failure to call the girls to testify.

### 3. ANDRE CAMP

Tytiana, Tytiana's mother Monique, and Thornton all gave statements to the police and their statements were not wholly consistent with their trial testimony. Calvin Washington, the officer who spoke to Monique and to Thornton, testified at trial. Another officer, Andre Camp, spoke to Tytiana and he was not called to testify. Defendant argues that defense counsel was ineffective for failing to call Camp to testify. The record shows that counsel wanted to question Camp, but mistakenly believed that Tytiana had spoken to Washington. By the time the error was discovered, it was apparently too late to secure Camp's presence. However, to the extent that counsel erred by failing to realize that Camp was the witness he wanted to examine and to take steps to ensure his presence at trial, defendant cannot show that he was prejudiced by counsel's error.

Camp would have been called to testify that whatever was in Tytiana's statement was what she had told him. At trial, Tytiana identified both defendant and David Smith as the gunmen. In her statement, she gave a physical description of a single gunman. She also said that the gunman left the scene in a silver car. Tytiana testified that the silver car was a Pacifica belonging to LaToya, but she did not mention that in her statement. She testified that she did tell Camp that Latoya had hit her, that she mentioned defendant's name to Camp, and that she mentioned another shooter known as "D," but that information did not appear in her statement. Tytiana nonetheless signed the statement. Through cross-examination, the jury was aware that Tytiana's police statement was not entirely consistent with her testimony, and that no suspect was identified by name in the statement. There is nothing in the record to indicate that Camp had any independent recollection of talking to Tytiana such that he would have been able to testify to anything else she might have said or not said that was not included in her written statement. The jury could have inferred that because a suspect's name was not mentioned in Tytiana's statement, Tytiana did not in fact mention defendant's name or that of "D" to Camp. Finally, even without Tytiana's testimony, Thornton, who had no prior contact with defendant, was able to identify him as one of the men who shot him. Therefore, it is not reasonably likely that the outcome of the proceedings would have been different had Camp been called to testify.

### 4. KEYON GREEN

There is evidence in the record that Tytiana's cousin, Keyon Green, may have been present at the scene. He did not testify at trial. Defendant contends that counsel was ineffective for failing to call Green to testify. There is nothing in the record to show what testimony Green would have offered, much less that he had information beneficial to the defense. Although defendant offers Green's police statement, that statement is not part of the lower court record and thus may not be considered on appeal. *Seals*, 285 Mich App at 20-21; *Powell*, 235 Mich App at 561 n 4. Even assuming that Green's statement could be considered, it does not support a finding that counsel was ineffective for failing to call Green to testify at trial. Although Green provided some information that conflicted with that offered by the prosecution's witnesses, he

also stated that he was familiar with defendant, saw defendant at the scene with a gun, and saw defendant shoot Thornton. Because Green's testimony would have inculpated the defendant, counsel's failure to call Green as a witness was not objectively unreasonable and did not deprive defendant of a substantial defense.

## B. IMPEACHMENT EVIDENCE

"Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *Rockey*, 237 Mich App at 76. Decisions regarding how to cross-examine and impeach witnesses are also matters of trial strategy. *In re Ayres*, 239 Mich App 8, 23; 608 NW2d 132 (1999); *People v McFadden*, 159 Mich App 796, 800; 407 NW2d 78 (1987).

Defendant argues that counsel was ineffective for failing to impeach Monique with a recent conviction for welfare fraud. There is nothing in the record to indicate whether counsel investigated the prosecution's witnesses for criminal convictions, or anything in the record to indicate that those witnesses did in fact have any criminal convictions. Defendant relies on a Michigan Department of Corrections's Offender Tracking Information System website profile showing that Monique was convicted of "fraud-welfare-failure to inform-$500 or more" under MCL "400.602B" in 2013. Even if this evidence is considered, it does not support a finding that defendant was prejudiced by counsel's failure to use it to impeach Monique. Failure to impeach witnesses with prior convictions has been found to constitute ineffective assistance of counsel when the witnesses were the only witnesses to the offense and the only witnesses who could refute the defendant's account. *People v Nickson*, 120 Mich App 681, 686-687; 327 NW2d 333 (1982). In this case, defendant did not testify and Monique was just one of three witnesses to the shooting. Even if Monique's testimony is disregarded in its entirety, the fact still remains that Thornton, who had no prior contact with defendant, was able to identify him as one of the men who shot him. Therefore, it is not reasonably likely that the outcome of the proceedings would have been different had counsel impeached Monique with evidence of her conviction.

## C. MISCELLANEOUS CLAIMS

We have reviewed the remainder of defendant's ineffective assistance of counsel claims raised in his Standard 4 brief and find them to be unsupported by the record and without merit. Further, defendant has failed to brief the merits of his claims that the weapons were subject to suppression or that he was entitled to have the weapons charges severed, and thus we deem these claims abandoned. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009); *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

## D. CUMULATIVE ERROR

Defendant contends that he is entitled to relief based on the cumulative effects of counsel's many errors. "Although one error in a case may not necessarily provide a basis for reversal, it is possible that the cumulative effect of a number of minor errors may add up to error requiring reversal." *People v Anderson*, 166 Mich App 455, 472-473; 421 NW2d 200 (1988). The term 'cumulative error' "refers to cumulative unfair *prejudice*, and is properly considered in connection with issues of harmless error." *People v LeBlanc*, 465 Mich 575, 591-592 n 12; 640

NW2d 246 (2002). "[O]nly 'actual errors' are aggregated when reviewing a cumulative-error argument." *People v Gaines*, 306 Mich App 289, 310; 856 NW2d 222 (2014). "The test to determine whether reversal is required is not whether there are some irregularities, but whether defendant has had a fair trial." *People v Kvam*, 160 Mich App 189, 201; 408 NW2d 71 (1987).

Defendant has shown only one actual error by counsel, but has not shown that he was prejudiced by that error. Accordingly, defendant's cumulative-error claim fails.

## II. SCORING OF THE SENTENCING GUIDELINES

Defendant argues through appointed counsel that the trial court erred in scoring offense variable (OV) 7 of the sentencing guidelines. Defendant preserved this issue by challenging the scoring of OV 7 in a motion to remand. MCR 6.429(C); *People v McChester*, 310 Mich App 354, 357; 873 NW2d 646 (2015), lv pending. Defendant further argues in his Standard 4 brief that the trial court erred in scoring OVs 4, 9, and 10. Because defendant did not challenge the scoring of these variables at sentencing, in a motion for resentencing, or in his motion to remand, those scoring challenges are unpreserved. MCR 6.429(C).

Where the issue has been preserved,

> Determining whether a trial court properly scored sentencing variables is a two-step process. First, the trial court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. The clear error standard asks whether the appellate court is left with a definite and firm conviction that a mistake has been made. Second, the appellate court considers de novo "whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute." [*People v Rhodes,* 495 Mich 938; 843 NW2d 214 (2014) (citations omitted).].

"An unpreserved objection to the scoring of offense variables is reviewed for plain error." *Odom,* 276 Mich App at 411.

OV 7 considered "aggravated physical abuse" of the victim. MCL 777.37(1). It is not necessary, however, "that there be actual physical abuse in order to score 50 points under" OV 7. *People v Mattoon*, 271 Mich App 275, 278; 721 NW2d 269 (2006). The court is to score 50 points if "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a)[4]. In *People v Hardy*, 494 Mich 430; 835 NW2d 340 (2013), our Supreme Court provided the following guidelines for determining whether a defendant's conduct substantially increased the fear and anxiety a victim suffered during the offense:

---

[4] MCL 777.37(1)(a) has since been amended by 2015 PA 137, effective Jan. 5, 2016, to read: "A victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."

[A] court must first determine a baseline for the amount of fear and anxiety experienced by a victim of the type of crime or crimes at issue. To make this determination, a court should consider the severity of the crime, the elements of the offense, and the different ways in which those elements can be satisfied. Then the court should determine, to the extent practicable, the fear or anxiety associated with the minimum conduct necessary to commit the offense. Finally, the court should closely examine the pertinent record evidence, including how the crime was actually committed by the defendant. As noted above, evidence which satisfies an element of an offense need not be disregarded solely for that reason. Instead, all relevant evidence should be closely examined to determine whether the defendant engaged in conduct beyond the minimum necessary to commit the crime, and whether it is more probable than not that such conduct was intended to make the victim's fear or anxiety increase by a considerable amount. [*Id*. at 442-443 (footnotes omitted).]

The elements of assault with intent to commit murder are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Hoffman,* 225 Mich App 103, 111; 570 NW2d 146 (1997). An "assault" is defined as "either an attempt to commit a battery or an unlawful act that placed another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). The defendant need not actually injure the victim. *People v Davis,* 216 Mich App 47, 53; 549 NW2d 1 (1996) (offense established by evidence that defendant threatened to kill the victim and tried to shoot him but the gun did not fire). Defendant could commit an assault by merely displaying a gun, *People v Pace*, 102 Mich App 522, 534; 302 NW2d 216 (1980), and demonstrate the requisite intent by threatening to kill the victim. Defendant went beyond the minimum conduct necessary by threatening the victim with the gun and then actually shooting him. While the fact that defendant shot Thornton in the chest was evidence of his intent to kill, evidence is not to be disregarded simply because it satisfies an element of the offense. *Hardy*, 494 Mich at 443. Further, defendant shot Thornton while he was lying helpless on the ground and unable to escape, shot him not once but twice, and shot him in a vital area in an attempt to kill him. This "actualized violence" was sufficient to create a considerable amount of additional fear. Accordingly, a preponderance of the evidence supports a 50-point score for OV 7 on the basis that defendant engaged in "conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." Because "counsel cannot be faulted for failing to raise an objection or motion that would have been futile," *People v Fike,* 228 Mich App 178, 182-183; 577 NW2d 903 (1998), defendant's related claim of ineffective assistance of counsel must be rejected.

Although defendant also challenges the scoring of OVs 4, 9, and 10, in his Standard 4 brief, any error in the scoring of these variables would not entitle defendant to resentencing. Defendant received a total of 145 offense variable points, placing him in OV Level VI on the applicable sentencing grid. MCL 777.62. A reduction of 30 points attributable to the scoring of OVs 4, 9, and 10 would lower defendant's total OV score to 115 points, which would not affect his placement in OV Level VI (100+ points). Because any scoring error would not alter the appropriate guidelines range, resentencing is not required. *People v Francisco,* 474 Mich 82, 89 n 5; 711 NW2d 44 (2006). Because defendant is not entitled to resentencing for these alleged

errors, his related claim of ineffective assistance of counsel also must fail. *People v Wilson*, 252 Mich App 390, 393-394; 652 NW2d 488 (2002).

Defendant also argues that the trial court engaged in impermissible judicial fact-finding to score the guidelines. Because defendant did not object to the scoring of the OVs on this ground at sentencing, this issue is unpreserved and our review is limited to plain error affecting substantial rights. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015).

In *Lockridge*, 498 Mich at 364, our Supreme Court held that "the rule from *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), as extended by *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), applies to Michigan's sentencing guidelines and renders them constitutionally deficient" because of "the extent to which the guidelines *require* judicial fact-finding beyond the facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range . . . ." The Court further held:

> To remedy the constitutional violation, we sever MCL 769.34(2) to the extent that it makes the sentencing guidelines range as scored on the basis of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt mandatory. . . .
>
> * * *
>
> Consistently with the remedy imposed by the United States Supreme Court in *United States v Booker*, 543 US 220, 233; 125 S Ct 738; 160 L Ed 2d 621 (2005), we hold that a guidelines minimum sentence range calculated in violation of *Apprendi* and *Alleyne* is advisory only and that sentences that depart from that threshold are to be reviewed by appellate courts for reasonableness. To preserve as much as possible the legislative intent in enacting the guidelines, however, we hold that a sentencing court must determine the applicable guidelines range and take it into account when imposing a sentence. [*Lockridge*, 498 Mich at 364-365 (citations omitted).]

The Supreme Court in *Lockridge* provided instructions on the application of its decision in other cases, like this one, where review is for plain error affecting substantial rights. It stated that if the facts admitted by the defendant and the facts found by the jury were not sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he was sentenced and the trial court imposed a minimum sentence within the sentence range recommended by that cell (i.e., did not depart from the guidelines), the defendant has "establish[ed] a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Id*. at 395.

In the instant case, the trial court sentenced defendant within the guidelines range. Because an intent to kill is a necessary element of assault with intent to commit murder, *Hoffman,* 225 Mich App at 111, and possession of a firearm is a necessary element of felony-firearm, *People v Mitchell,* 456 Mich 693, 698; 575 NW2d 283 (1998), the jury's verdicts support the assessment of five points for OV 2, MCL 777.32(1)(d) (the offender possessed a

pistol, rifle, or shotgun), and 25 points for OV 6, MCL 777.36(1)(a) (the offender had an unpremeditated intent to kill). However, judicial fact-finding was necessary to score 25 points for OV 1, MCL 777.31(1)(a) (firearm was discharged at or toward a human being); 10 points for OV 3, MCL 777.33(1)(d) (bodily injury requiring medical treatment occurred to a victim); 10 points for OV 4, MCL 777.34(1)(a) (serious psychological injury requiring professional treatment); 10 points for OV 9, MCL 777.39(1)(c) (2 to 9 victims who were placed in danger of physical injury or death); 10 points for OV 10, MCL 777.40(1)(b) (exploitation of victim's physical disability); and 50 points for OV 7, MCL 777.37(1)(a) (victim treated with sadism, torture, excessive brutality, or conduct designed to substantially increase the victim's fear and anxiety during the offense). The factual bases for these scores are not supported by the jury's verdicts, or any admissions by defendant. Therefore, only 30 of the 145 total OV points are supported by facts admitted by defendant or necessarily found by the jury beyond a reasonable doubt. An OV score of 30 points will place defendant in OV Level II instead of OV Level VI, and thus reduce defendant's guidelines range from 171 to 285 months (at the D-VI cell) to 81 to 135 months (at the D-II cell). Because the trial court sentenced defendant within the guidelines range prescribed by the D-VI cell, defendant has "establish[ed] a threshold showing of potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Lockridge*, 498 Mich at 395.

On remand, the trial court should first allow defendant an opportunity to decide whether he still seeks resentencing. If so, the court should allow counsel to provide their views on the matter. The court should then "determine whether plain error occurred, i.e., whether the court would have imposed the same sentence absent the unconstitutional constraint on its discretion" or, stated another way, whether the court "would have imposed a materially different sentence but for the constitutional error." "If the trial court determines that it would not have imposed the same sentence but for that constraint, it must resentence the defendant." *Id*. at 398-399.

Affirmed in part and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Cynthia Diane Stephens

-9-