PEOPLE v DUVALL

Docket No. 103637. Submitted April 19, 1988, at Detroit. Decided August 16, 1988. Leave to appeal denied, 431 Mich —.

Henry E. Duvall, a Wayne County deputy sheriff in charge of handling bond monies for the sheriff's department, was charged with and bound over to the Recorder's Court of Detroit on two counts of embezzlement by an agent arising out of Duvall's alleged misappropriation of bond monies. Defendant moved to suppress as evidence documents and receipts seized from the top of defendant's desk, from within the desk and from an open bookshelf. The court, David P. Kerwin, J., granted the motion to suppress, holding that the seizure of the documents in defendant's office without a warrant was unlawful and that the use of those documents as evidence must be suppressed. The prosecution appealed on leave granted.

The Court of Appeals *held:*

1. Under the circumstances, defendant had no reasonable expectation of privacy with respect to the documents seized from the desk and surrounding area of the office he shared with two other deputy sheriffs; accordingly, defendant lacks standing to raise the question of whether the seizure of the public records kept on or about his desk was unlawful.

2. Since at the time the documents were seized there was not a criminal investigation which had focused upon defendant, but rather the documents were seized for an audit to determine why bond monies were being delivered late to the courts, the search of defendant's work area and the seizure of the documents was reasonable.

Reversed.

SEARCHES AND SEIZURES — STANDING — REASONABLE EXPECTATION OF PRIVACY — PUBLIC OFFICIALS.

A police officer charged with the responsibility of the custody of bail bond money and the maintaining of bail bond records and

REFERENCES

Am Jur 2d, Searches and Seizures § 19.

See the Index to Annotations under Privacy; Public Officers and Employees; Search and Seizure.

who has a desk in an office with other police officers has no reasonable expectation of privacy with respect to his desk and the records he maintains; accordingly, such an officer lacks standing to raise an illegal search and seizure claim where his employer seizes without a warrant work-related records from the officer's desk for the purpose of an investigatory audit; such a seizure of work-related records for the purpose of a noncriminal investigation is a constitutionally reasonable search and seizure.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Janice M. Joyce Bartee,* Assistant Prosecuting Attorney, for the people.

*Daniel J. Blank,* for defendant.

Before: Cynar, P.J., and Gribbs and T. Gillespie,* JJ.

Gribbs, J. The people appeal by leave granted from a September 3, 1987, Detroit Recorder's Court decision to suppress evidence seized during a search without a warrant of defendant's office. Proceedings against defendant, who is charged with two counts of embezzlement by an agent, MCL 750.174; MSA 28.371, are stayed pending this appeal. We reverse.

Defendant, Henry Edward Duvall, a Wayne County deputy sheriff, was in charge of handling bond monies for the sheriff's department. Defendant's office was located in the new Wayne County jail. Defendant's duties included picking up the bond monies from the bond room safe in the Wayne County jail lobby and verifying the total count of bonds posted and logged at the jail each day. Defendant was also responsible for returning

---

* Circuit judge, sitting on the Court of Appeals by assignment.

bond money and documents to appropriate court bond offices.

According to the preliminary examination testimony of Wayne County Sheriff Department Sergeant Rodney B. Pitts, the department's internal security bureau received a complaint in early September, 1986, that bonds were being delivered late to Detroit Recorder's Court. Since the bonding process involves a series of log books, documents and departments, the Auditor General Division of Wayne County began a review of the entire bond procedure. On October 28, 1986, the auditor informed the internal security bureau that the review had revealed some discrepancies and that bonds had, indeed, been delivered late.

The auditors decided to conduct a "quick cash count" to determine if there was any discrepancy between the total bond receipts and the amount of bond money collected. When asked whether his investigation was focused on any particular person at that time, Sergeant Pitts testified that he had been ordered not to begin any investigation into the problem of late bond deliveries until after the auditors could conduct their cash count.

On the morning of October 31, 1986, Sergeant Pitts, Lieutenant Michael Sheldon, Detective Henry Roberson and Wayne County Auditor Dennis Suszynski arrived unannounced at defendant's office. Sergeant Pitts testified that he did not suspect defendant of criminal activity at that time. Specifically, there had been no complaint of missing bond monies. Lieutenant Sheldon explained to defendant that he would be taking over defendant's bond duties so that an audit could be conducted and that defendant was "free to leave after the cash change over." Although defendant was relieved of his bond duties, he continued to perform his other duties as a deputy sheriff.

Sergeant Pitts asked defendant to explain for him the procedures that defendant followed when processing bond money and documents. Sergeant Pitts testified that he often questions officers about their job procedures during administrative investigations. Defendant was apparently having problems with his voice and throat and wanted to leave work early, so he made an appointment to talk to Sergeant Pitts on November 3, 1986.

Before defendant left for the day, Sergeant Pitts asked him to turn over any documents pertaining to bonds. Defendant gave Sergeant Pitts a box of receipt books that had been kept under defendant's desk. Defendant also pointed out "nine dollars and some change" in his desk and indicated that it was his personal property.

After defendant left the office, Sergeant Pitts seized numerous documents and receipts from the top of defendant's desk, from inside the desk and from an open bookshelf. Among the materials seized were mittimuses that allegedly appear to have been detached from bond money. It is undisputed that the parties did not have a search warrant for defendant's office.

On November 21, 1986, three weeks after the search in question, the department received a complaint from Paul A. Szymanski, Jr., about missing bond money. Szymanski had previously posted two $1,000 cash bonds for his brother-in-law and had been issued receipts. On November 21, 1986, Szymanski petitioned in Recorder's Court for the return of his bond money and a "bond receipt" was issued to allow him to collect the $2,000 minus ten percent. However, when Szymanski went to the bond office for his money, he was told that there was no record of his bond and advised to file a complaint. As a result of Szymanski's complaint, and after further investigation, a war-

rant for defendant's arrest was ultimately issued. Defendant continued to work as a deputy sheriff until January, 1987, when he was arrested and suspended from his job.

Following a preliminary examination, defendant was bound over for trial on two counts of embezzlement by an agent. On September 3, 1987, the trial court granted defendant's motion to suppress all evidence seized as a result of the search of his office.

Both the Michigan and United States Constitutions provide that every person shall be secure from unreasonable searches and seizures of their person, houses, papers and possessions. US Const, Am IV; Const 1963, art 1, § 11. The protections of the Fourth Amendment also extend to searches and seizures by government employers of the *private* property of their employees. *O'Connor v Ortega,* 480 US —; 108 S Ct 1492; 94 L Ed 2d 714 (1987).

In determining whether a violation of the Fourth Amendment has occurred, we must first ascertain whether the defendant has standing to challenge the search. This determination is made by discerning whether the defendant had a reasonable expectation of privacy in the place that was searched. *United States v Salvucci,* 448 US 83; 100 S Ct 2547; 65 L Ed 2d 619 (1980); *People v Smith,* 420 Mich 1, 6-7; 360 NW2d 841 (1984). If the defendant did have a reasonable expectation of privacy, we must then determine whether the search was unreasonable under the Fourth Amendment. The trial court in this case found that defendant Duvall did have a reasonable expectation of privacy in his office and that the search was unreasonable. We disagree on both issues.

Individuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer. The operational realities of the workplace, however, may make *some* employees' expectations of privacy unreasonable when an intrusion is by a supervisor rather than a law enforcement official. [*Ortega,* 94 L Ed 2d 723.]

The question of whether a public employee has a reasonable expectation of privacy in the workplace must be addressed on a case-by-case basis. "[S]ome government offices may be so open to fellow employees or the public that no expectation of privacy is reasonable." *Id.*

We do not believe that defendant's Fourth Amendment rights were infringed upon in this case. Defendant's private property was not the subject of the search and seizure at issue. In addition, on the facts of this case, we do not believe that defendant had a reasonable expectation of privacy in his office.

In addressing this issue, both parties and the trial court focus on the 1987 United States Supreme Court decision in *O'Connor v Ortega,* which involved the search without a warrant by state hospital officials of the private office of a doctor employed by the hospital. The hospital was investigating charges that the doctor may have acquired a computer by means of coerced contributions by hospital residents, claims of sexual harassment by female employees and a claim of inappropriate disciplinary action against a resident. While there was no majority opinion in *Ortega,* five members of the Supreme Court agreed that Dr. Ortega had a reasonable expectation of privacy in his office and all the members agreed that the doctor had a reasonable expectation of privacy in his desk and file cabinets.

The facts of *Ortega,* however, are quite different from the facts in this case. The undisputed evidence in *Ortega* disclosed that Dr. Ortega did not share his private office with any other employees. Doctor Ortega kept personal correspondence, medical files, correspondence from private patients unconnected with the hospital, personal financial records, teaching aids and notes, and personal gifts and mementos in his office. The hospital files on physicians in residency training, on the other hand, were kept outside Dr. Ortega's office. Among the items seized in *Ortega* were a Valentine's Day card, a photograph and a book of poetry. Indeed, the Supreme Court noted that all of the items seized from Dr. Ortega's office were of a personal nature. *Ortega,* 94 L Ed 2d 724.

By contrast, in this case defendant Duvall shared an office with two other deputy sheriffs. There is no evidence that defendant had anything of a personal nature in his office, with the exception of the "nine dollars and some change" that defendant pointed out to Sergeant Pitts. Moreover, there is no evidence that anything except work-related papers were taken from defendant's office.

"Government offices are provided to employees for the sole purpose of facilitating the work of an agency. The employee may avoid exposing personal belongings at work by simply leaving them at home." *Ortega,* 94 L Ed 2d 728. We do not believe that defendant Duvall has standing to challenge the search and seizure of government property in his jointly occupied government office.

Even if we had not ruled that defendant Duvall had no reasonable expectation of privacy in this case, assuming arguendo that such expectaton did exist in this case, we do not find that the search was unreasonable. In reaching this conclusion we follow the two-pronged test applied in *Ortega.*

It is noteworthy that *Ortega* was remanded on the issue of reasonableness. The Ninth Circuit Court of Appeals had ruled that the search in *Ortega* was unreasonable simply because Dr. Ortega had a reasonable expectation of privacy in his office. The Supreme Court agreed that Dr. Ortega had a reasonable expectation of privacy, at least in his desk and file cabinets, but reversed and remanded nonetheless for a determination of whether the search was reasonable. " '[T]o hold that the Fourth Amendment applies to searches conducted by [public employees] is only to begin the inquiry into the standards governing such searches . . . . [W]hat is reasonable depends on the context within which a search takes place.' " *Ortega,* 94 L Ed 2d 724, quoting *New Jersey v TLO,* 469 US 325, 337; 105 S Ct 733; 83 L Ed 2d 720 (1985).

The Supreme Court set forth the appropriate standard of reasonableness in *Ortega:*

> A determination of the standard of reasonableness applicable to a particular class of searches requires "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v Place,* [462 US 696, 703; 103 S Ct 2637; 77 L Ed 2d 110 (1983)]; *Camara v Municipal Court,* [387 US 523, 536-537; 87 S Ct 1727; 18 L Ed 2d 930 (1967)] . In the case of searches conducted by a public employer, we must balance the invasion of the employees' legitimate expectations of privacy against the government's need for supervision, control and the efficient operation of the workplace. [*Ortega,* 94 L Ed 2d 724.]

It is generally recognized that any "work-related" search by an employer satisfies the Fourth Amendment reasonableness requirement:

See *United States v Nasser,* 476 F2d 1111, 1123 (CA 7, 1973) ("work-related" searches and seizures are reasonable under the Fourth Amendment); *United States v Collins,* 349 F2d 863, 868 (CA 2, 1965) (upholding search and seizure because conducted pursuant to "the power of the Government as defendant's employer, to supervise and investigate the performance of his duties as a Customs employee"). Others have suggested the use of a standard other than probable cause. See *United States v Bunkers,* 521 F2d 1217 (CA 9, 1975) (work-related search of a locker tested under "reasonable case" standard); *United States v Blok,* [88 US App DC 326, 328; 188 F2d 1019 (1951)] ("No doubt a search of [a desk] without her consent would have been reasonable if made by some people in some circumstances. Her official superiors might reasonably have searched the desk for official property needed for official use"). The only cases to imply that a warrant should be required involve searches that are not work-related, see *Gillard v Schmidt,* [579 F2d 825, 829, n 1 (CA 3, 1978)], or searches for evidence of criminal misconduct, see *United States v Kahan,* 350 F Supp 784 (SD NY, 1972). [*Ortega,* 94 L Ed 2d at 725.]

See also *United States v Bilanzich,* 771 F2d 292, 297 (CA 7, 1985); *Grice v State,* 635 SW2d 890, 894 (Tex App, 1982); *Milyonico v United States,* 53 F2d 937 (CA 7, 1931), cert den 286 US 551 (1932).

The *Ortega* Court concluded, and we agree, that requiring a warrant for work-related searches would be disruptive and unduly burdensome.

[E]mployers . . . frequently need to enter the offices and desks of their employees for legitimate work-related reasons wholly unrelated to illegal conduct. Employers and supervisors are focused primarily on the need to complete the government agency's work in a prompt and efficient manner. An employer may have need for correspondence, or a file or report available only in an employee's

office while the employee is away from the office. Or, as is alleged to have been the case here, employers may need to safeguard or identify state property or records in an office in connection with a pending investigation into suspected employee misfeasance. [*Ortega,* 94 L Ed 2d 726.]

Work-related searches are merely incident to the primary business of an agency. *Id.* We cannot ignore "the common-sense realization that government offices could not function if every employment decision became a constitutional matter." *Connick v Myers,* 461 US 138, 143; 103 S Ct 1684; 75 L Ed 2d 708 (1983).

> The governmental interest justifying work-related intrusions by public employers is the efficient and proper operation of the workplace. Government agencies provide myriad services to the public, and the work of these agencies would suffer if employers were required to have probable cause before they entered an employee's desk for the purpose of finding a file or piece of office correspondence. Indeed, it is difficult to give the concept of probable cause, rooted as it is in the criminal investigatory context, much meaning when the purpose of a search is to retrieve a file for work-related reasons. Similarly, the concept of probable cause has little meaning for a routine inventory conducted by public employers for the purpose of securing state property. See *Colorado v Bertine,* 479 US 367; 107 S Ct 738; 93 L Ed 2d 739 (1987); *Illinois v Lafayette,* 462 US 640; 103 S Ct 2605; 77 L Ed 2d 65 (1983). To ensure the efficient and proper operation of the agency, therefore, public employers must be given wide latitude to enter employee offices for work-related, noninvestigatory reasons.
>
> We come to a similar conclusion for searches conducted pursuant to an investigation of work-related employee misconduct. Even when employers conduct an investigation, they have an interest

substantially different from "the normal need for law enforcement." *New Jersey v TLO, supra,* at 351; 105 S Ct 733; 83 L Ed 2d 720 (Blackmun, J., concurring in judgment). Public employers have an interest in ensuring that their agencies operate in an effective and efficient manner, and the work of these agencies inevitably suffers from the inefficiency, incompetence, mismanagement or other work-related misfeasance of its employees. Indeed, in many cases, public employees are entrusted with tremendous responsibility, and the consequences of their misconduct or incompetence to both the agency and the public interest can be severe. . . .

\* \* \*

. . . We hold, therefore, that public employer intrusions on the constitutionally protected privacy interests of government employees for noninvestigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances. Under this reasonableness standard, both the inception and the scope of the intrusion must be reasonable. [*Ortega,* 94 L Ed 2d 727,728.]

We find defendant's argument that the search was part of a criminal investigation untenable. The fact that three members of the investigative team were law enforcement officers is of little import on the facts of this case. Defendant was, himself, employed as a law enforcement officer in a law enforcement department. His superiors were also, necessarily, law enforcement officers. We do not believe that the mere presence of law enforcement officers raises the implication that this was a law enforcement search, since there is no other evidence that this was a criminal investigation. Defendant was not suspected of criminal activity at the time of the search. In fact, at that time the department was unaware that bond monies were

missing. An audit was being conducted because of reports that bond money was being delivered late to the courts. It is apparent on the facts of this case that the investigation of defendant's office was merely a part of the larger investigation of the bonding process. The most defendant was suspected of at that time was work-related misconduct.

"A search to secure state property is valid so long as [the employer] had a reasonable belief that there was government property in [the defendant's] office which needed to be secured, and the scope of the intrusion was itself reasonable in light of this justification." *Ortega,* 94 L Ed 2d 730. It is undisputed in this case that the department reasonably believed that bond monies and documents were kept in defendant's office, and it is self-evident that those papers needed to be secured as part of the bonding audit. Since there is no evidence that anything other than government property was seized, we cannot say that the scope of the intrusion in this case was unreasonable.

Reversed.