PEOPLE v POWELL

Docket No. 210603. Submitted May 6, 1999, at Lansing. Decided May 21, 1999, at 9:05 A.M.

Paul L. Powell, III, was convicted by a jury in the Washtenaw Circuit Court, David S. Swartz, J., of receiving and concealing stolen property valued in excess of $100 and of concealing the identity of a motor vehicle with intent to mislead. The defendant appealed, claiming that the trial court erred in denying his motion to suppress evidence seized in a search, conducted without a warrant, of University of Michigan office and laboratory space referred to as a "cell" and used by the defendant as part of his paid graduate studies in engineering. In denying the motion, the trial court determined that the defendant had no expectation of privacy with respect to the cell and therefore lacked standing to challenge the search and seizure as being violative of federal and state constitutional protections against unreasonable searches and seizures.

The Court of Appeals *held*:

While there can be a legitimate expectation of privacy in an office or workplace, none is found in this case. The defendant did not have unencumbered access to the cell, did not have a key to it, did not have control over who entered the cell, and could not prohibit the university employee to whom the cell was assigned from inviting into the cell anyone the employee chose. In addition, the professor who monitored the defendant's projects had a key to the cell, as did custodial personnel, officers of the university's department of public safety, and one other person. The defendant did not store any personal effects in the cell with the exception of the motorcycles and motorcycle parts that were the subject of his criminal prosecution, and the defendant made no effort to shield the motorcycles and parts from view, or to hide or secure them.

Affirmed.

1. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW — STANDING — EXPECTATION OF PRIVACY.

Whether a person has standing to challenge a search and seizure under federal and state constitutional provisions that prohibit unreasonable searches and seizures depends on whether the person had an expectation of privacy in the object of the search and

seizure and whether the expectation is one that society recognizes as reasonable (US Const, Am IV; Const 1963, art 1, § 11).

2. SEARCHES AND SEIZURES — WORKPLACE — CONSTITUTIONAL LAW — STANDING.
    Factors relevant to a determination whether an employee has standing to challenge a workplace search and seizure include ownership, possession, or control of the area searched or item seized, historical use of the property or item, ability to regulate access, the totality of the circumstances surrounding the search, the existence or nonexistence of a subjective anticipation of privacy, and the objective reasonableness of the expectation of privacy considering the specific facts of the case (US Const, Am IV; Const 1963, art 1, § 11).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Brian L. Mackie*, Prosecuting Attorney, and *David A. King*, Senior Assistant Prosecuting Attorney, for the people.

*Roberts & Freatman* (by *Ellis B. Freatman, III*), for the defendant.

Before: GRIBBS, P.J., and KELLY and HOOD, JJ.

PER CURIAM. Defendant was convicted of receiving and concealing stolen property in excess of $100, MCL 750.535; MSA 28.803, and concealing the identity of a motor vehicle with intent to mislead, MCL 750.415(2); MSA 28.647(2).[1] Before trial, defendant moved to suppress evidence seized during a search of the test "cell" space where he conducted experiments as a graduate student at the University of Michigan.[2] Following an evidentiary hearing, the trial court denied defendant's motion. Defendant was sentenced to one year of probation, thirty hours of community

---

[1] Defendant had also been charged with operating a chop shop, MCL 750.535a; MSA 28.803(1), but the count related to that charge was dismissed.

[2] The "cell" was described as a sort of combined laboratory and office.

service, a $500 fine, and $5,000 restitution. He appeals as of right, and we affirm.

Defendant was a graduate engineering student at the University of Michigan in Ann Arbor. He was assigned by his professor to a cell on university property. There he worked with test engineer Mark Robinson, who was not a student but a "regular employee." Robinson was assigned to the particular cell at issue and had a key to that cell. Although defendant regularly worked in the cell conducting confidential tests and experiments, he did not have a key to it, and had access to it only through the use of Robinson's key or if he asked someone else who had a key. At the evidentiary hearing, Robinson testified that the professors usually had master keys to the cells, and the professor who assigned defendant to work in the cell had access to the cell to monitor projects. In addition, Robinson testified that there was also another person with a key to the cell, and it was uncontroverted that public safety officers and custodial personnel had keys to the cell. Robinson unequivocally indicated at the hearing that he could have invited anyone he wished into the cell because it was his cell and he decided who could enter.

Apparently, University Department of Public Safety (DPS) officers went to the cell after receiving a tip about possible stolen property. Officer Timothy Shannon of the DPS testified that he was invited by defendant to enter. Upon entry, Shannon and another officer observed two motorcycles and a motorcycle frame. The vehicle identification number on the motorcycle frame was obscured and partially removed. The license plate on one of the motorcycles was stolen and there was no paperwork on the other motorcycle.

The officers seized the motorcycles, the frame, and other motorcycle parts and accessories from the cell. They did not have a warrant.

Defendant argues that he had a legitimate expectation of privacy in the cell and, thus, that the search without a warrant was improper and that the evidence seized should have been suppressed.[3] We disagree. While the trial court's findings are reviewed for clear error, the ruling on the motion to suppress is reviewed de novo for all mixed questions of fact and law, and for all pure questions of law. *People v Marsack*, 231 Mich App 364, 372; 586 NW2d 234 (1998), lv pending. See also *People v Howard*, 233 Mich App 52, 54; 595 NW2d 497 (1998), lv pending.

Both the Michigan and United States Constitutions prohibit unreasonable searches and seizures. Const 1963, art 1, § 11; US Const, Am IV. The interests under both provisions are equal. *People v Smith*, 420 Mich 1, 27; 360 NW2d 841 (1984), citing *People v Nash*, 418 Mich 196; 341 NW2d 439 (1983). The test to determine whether a person has a protected privacy right under the Fourth Amendment or art 1, § 11 is whether the defendant had an expectation of privacy in the object of the search and seizure and whether the expectation is one that society recognizes as reasonable. *People v Perlos*, 436 Mich 305, 317-318; 462 NW2d 310 (1990); *Smith, supra* at 27-28.

---

[3] Although it is uncontroverted that Shannon testified that defendant had consented to allow them into the cell, and the motorcycles and motorcycle frame were in plain view, the trial court did not address the search and seizure issue in the context of a valid consent. Our review is limited to the issue raised by defendant with regard to his legitimate expectation of privacy. We note, however, that the evidence of consent seemed unequivocal and that defendant did not offer any evidence to contest the issue of consent.

> In determining whether a violation of the Fourth Amendment has occurred, we must first ascertain whether the defendant has standing to challenge the search. This determination is made by discerning whether the defendant had a reasonable expectation of privacy in the place that was searched. [*People v Duvall*, 170 Mich App 701, 705; 428 NW2d 746 (1988), citing *United States v Salvucci*, 448 US 83; 100 S Ct 2547; 65 L Ed 2d 619 (1980).]

The defendant has the burden of establishing standing, *People v Lombardo*, 216 Mich App 500, 505; 549 NW2d 596 (1996), and in deciding the issue, the court should consider the totality of the circumstances. *Smith, supra* at 28.

There are no determinative cases on point. We find defendant's reliance on cases related to the use of dormitory rooms by students to be inapplicable because the cell in this case is not remotely analogous to a living space. By analogy, however, we look to cases where the defendants asserted a reasonable expectation of privacy in their employment offices.[4]

In *Mancusi v DeForte*, 392 US 364; 88 S Ct 2120; 20 L Ed 2d 1154 (1968), the Supreme Court addressed whether the defendant had standing to object to the seizure of records taken from an office shared by the defendant and several other union officials. The Court stated, "[i]t has long been settled that one has standing to object to a search of his office." *Id.* at 369. Because the defendant spent a "considerable" amount

---

[4] At the outset, we note that although defendant appears to have been a paid graduate student, there is no evidence from which to conclude that defendant was an employee of the University of Michigan or that he used the "cell" as any type of an office. Defendant's argument that he was an employee is based on facts that were not in the lower court record. We do not consider those facts because it is impermissible to expand the record on appeal. *Trail Clinic, PC v Bloch*, 114 Mich App 700, 713; 319 NW2d 638 (1982).

of time in the large, shared office and had custody of the records at the moment of their seizure, he had standing under the Fourth Amendment to challenge the seizure of the papers. *Id.* at 368-369. In making its ruling, the Court discussed the fact that the defendant's office was a shared office:

> [I]t seems clear that if [the defendant] had occupied a "private" office in the union headquarters, and union records had been seized from a desk or a filing cabinet in that office, he would have standing. In such a "private" office, [the defendant] would have been entitled to expect that he would not be disturbed except by personal or business invitees, and that records would not be taken except with his permission or that of his union superiors. It seems to us that the situation was not fundamentally changed because [the defendant] shared an office with other union officers. [The defendant] still could reasonably have expected that only those persons and their personal or business guests would enter the office, and the records would not be touched except with their permission or that of union higher-ups. [*Id.* at 369 (citations omitted).]

In *O'Connor v Ortega*, 480 US 709; 107 S Ct 1492; 94 L Ed 2d 714 (1987), the Court revisited the issue in a different context. In *Ortega*, the defendant was an employee of a state hospital and was the subject of a work-related misconduct investigation when his private office was searched and property was seized. The property seized was not state property, but the defendant's personal property, including items taken from the desk and file cabinet. The Court stated:

> Public employees' expectations of privacy in their offices, desks, and file cabinets, like similar expectations of employees in the private sector, may be reduced by virtue of actual office practices and procedures, or by legitimate regulation. . . . The employee's expectation of privacy must

be assessed in the context of the employment relation. . . . Given the great variety of work environments in the public sector, the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis. [*Id.* at 717-718.]

The Court held that the defendant had a reasonable expectation of privacy in his desk and file cabinets because he did not share them, he had occupied his office for numerous years, and he kept personal correspondence, materials, and items there. *Id.* at 718.

In *United States v Najarian*, 915 F Supp 1441 (D Minn, 1995), which is cited by defendant, the court addressed a similar workplace search and seizure. It stated:

Factors relevant to the determination of standing include ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case. [*Id.* at 1449 (citations omitted).]

In *Najarian*, the defendant challenged two searches, one of a co-worker's residence and one of the defendant's corporate offices. With regard to the co-worker's residence, the court held that the defendant did not have standing:

The Defendant makes no showing that he was able to control access to [the co-worker's] premises, or that he, himself, had an unencumbered access to those premises.

Moreover, the Defendant has not asserted, let alone demonstrated, that he had a key to [the co-worker's] home; that he either resided or worked in that home with regularity; that he had stored any of his personal effects there,

apart from certain of his business papers; or that he had attempted, in any appreciable way, to restrict others from accessing the [corporate] documents that were located at [the co-worker's] residence. [*Id.* at 1450.]

With regard to the business offices, the court found a legitimate expectation of privacy, and thus standing on the part of the defendant. *Id.* at 1451-1453. The defendant was only one of four key holders, he had unencumbered access to the property, and he demonstrated an actual expectation in the privacy of the records stored there where he took measures to shield and secure the records from official and unofficial view. *Id.* at 1452-1454. In making its rulings, the court stated:

The greater the degree of exclusivity and control over a work area, and the more time a defendant spends there, the more likely standing is to be found. . . . By contrast, the less private a work area—and the less control a defendant has over that work area—the less likely standing is to be found. [*Id.* at 1452 (citation omitted).]

The only similar case in Michigan is *Duvall, supra,* where a panel of this Court found that, on the facts of the case, the defendant did not have a reasonable expectation of privacy in his office. The Court noted that the defendant, a public employee, shared his office with two co-workers, there was no evidence that he kept anything of a personal nature in his office with the exception of some money, and only work-related papers were seized from the office. *Id.* at 707.

While we recognize that there can be a legitimate expectation of privacy in an office or workplace, we do not find it in this case. Defendant did not have

unencumbered access to the cell, did not have a key, did not have control over who entered the cell, and, in fact, could not prohibit Robinson from inviting anyone he chose into the cell. In addition, the testimony revealed that the professor who monitored defendant's projects, custodial personnel, DPS officers, and one other person all had keys to the cell, which was part of university property. There was no evidence that defendant stored any personal effects there with the exception of the motorcycles and parts that were the subject of investigation and were seized.[5] With regard to that personal property, there is no evidence that defendant made any effort to shield it from view or hide or secure it. We acknowledge that defendant regularly conducted his assigned, confidential tests and experiments in the cell, that he was assigned to work in the cell, and that the cell was not supposed to be freely accessible by the public because of the confidential nature of the experiments performed therein. We also recognize that defendant kept the motorcycles and parts there. However, looking at the totality of the circumstances, we find that defendant did not have a reasonable expectation of privacy. Because this was a less private area than a private office, and because defendant had little control over the area, we decline to find that he had standing to challenge the search and seizure. Because we determine that defendant did not have standing, we need not determine whether the search was reasonable. *Duvall, supra* at 705.

Affirmed.

---

[5] Apparently not all of the items seized were determined to be stolen. Some were the legitimate personal property of the defendant.