*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TRAVIS MARTIN KOSINSKI,

        Defendant-Appellant.

UNPUBLISHED
November 19, 2019

Nos. 345192; 345193
Huron Circuit Court
LC Nos. 17-306157 FH;
       17-306206 FH

Before: RONAYNE KRAUSE, P.J., and METER and GLEICHER, JJ.

PER CURIAM.

In Docket No. 345192, defendant appeals by right his jury conviction of receiving and concealing stolen property with a value of $1,000 or more but less than $20,000, MCL 750.535(3)(a), for which he was sentenced to 18 months of probation with 60 days in jail. Defendant concedes that he has no meritorious challenge to his receiving and concealing stolen property conviction, so in Docket No. 345192, we affirm. In Docket No. 345193, defendant appeals by right his jury conviction of perjury, MCL 750.422, for which he was sentenced to 18 months of probation with one year in jail. Defendant argues that his counsel was ineffective by failing to present exculpatory evidence to the jury. We remand for the purpose of holding a *Ginther*[1] hearing.

## I. PROCEDURAL HISTORY

The controversy in this case stems from confusion between two nearly identical trailers owned by defendant: one a "flat-front" trailer and the other a "V-nose" trailer. Defendant and his cousin, Troy Kosinski, were business partners before the pair had a falling out and they dissolved their business. Defendant and Troy went to arbitration and Troy received an arbitration award, which ordered defendant to pay Troy $53,860 in monthly installments of $500. The arbitration award, through court order, also required defendant to give Troy his 2011

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Chevrolet Silverado truck, a red flat-front trailer, and their titles, as collateral until defendant finished paying the $53,860 award. On August 8, 2016, the same day the court order was signed, tow truck driver Bill Lampela went to defendant's property to repossess the truck and trailer. Lampela took possession of the truck unchallenged. Lampela attached the red trailer also on defendant's property to his truck, but he ultimately left the trailer behind after defendant informed him that it was not the trailer involved in the arbitration award. Lampela measured the trailer and found that it did not match the 30-foot length he was expecting based on the description in the court order. Lampela concluded that it might be the wrong trailer, and he left the trailer on defendant's property in order to avoid confrontation. Lampela later testified, during the October 2016 trial, that he had never tried to repossess a trailer before.

On October 7, 2016, the circuit court held a hearing during which defendant testified that he sold the flat-front trailer to his father in 2014, and since then, he had not seen the trailer nor did he know its current location. The court nevertheless ordered defendant to give the flat-front trailer and its title to Troy. According to defendant on appeal,[2] his father brought the flat-front trailer to defendant's property, at defendant's request, shortly after the arbitration award was entered. Defendant then contacted his attorney to notify him that he had the flat-front trailer in his possession to give to Troy. In response, defendant's attorney instructed him to keep the flat-front trailer on his property and to continue making the $500 monthly payments to Troy.

In January 2017, during a separate investigation, police officers discovered the flat-front trailer on defendant's property. Defendant was charged with perjury under the allegation he lied during the October 2016 trial about his knowledge of the flat-front trailer's location and not having seen it since 2014. Lampela was not specifically asked at defendant's trial whether the trailer he saw on defendant's property on August 8, 2016, was a flat-front trailer or a V-nose trailer. However, he identified a photograph of the flat-front trailer as the trailer he saw on defendant's property. Additionally, Troy testified that he had seen the flat-front trailer on defendant's property on August 7, 2016.[3] Defendant was convicted, as noted above. Defendant argues on appeal that Lampela misidentified his V-nose trailer as the flat-front trailer, and that

---

[2] As will be discussed, we would not ordinarily permit expansion of the record on appeal. However, the issue before us is not whether defendant's trial counsel *was* ineffective, but rather whether to remand for an evidentiary hearing as to his trial counsel's effectiveness. Consequently, the instant appeal represents a rare circumstance that warrants consideration of additional materials supplied by defendant on appeal.

[3] A police officer testified that he saw a trailer on defendant's property on October 11, 2016, in the same location where the flat-front trailer was eventually found. The officer was unable to determine whether the trailer he saw on October 11, 2016, was a flat-front or a V-nose. However, he testified that he also saw a V-nose trailer on a different property owned by defendant on the same day.

his trial counsel was aware of exculpatory evidence[4] to prove that Lampela was mistaken but failed to introduce that evidence at trial.

## II. STANDARD OF REVIEW

Defendant preserved his claim of ineffective assistance of counsel by filing a motion in this Court to remand for an evidentiary hearing to develop the record. *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973); *People v Sabin*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). However, because this Court denied defendant's motion,[5] no evidentiary hearing was held, and our review is, therefore, limited to the facts in the record. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). However, in reviewing a motion to remand for a *Ginther* hearing, we may consider affidavits and supporting exhibits presented by a defendant, even if those affidavits and exhibits are not part of the record. See *People v Moore*, 493 Mich 933, 933; 825 NW2d 580 (2013). We may also consider expanding the record in the interests of justice. MCR 7.216(A)(4); *People v Parkmallory*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 342546, slip op at p 2).

We review ineffective-assistance claims against counsel as mixed questions of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The defendant bears the burden to prove that defense counsel did not provide effective assistance. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Counsel is ineffective if (1) his or her performance falls below an objective standard of reasonableness, overcoming a strong presumption that counsel used discretion in executing trial strategy; and (2) without counsel's deficient performance, a different outcome was reasonably probable. *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). Counsel has discretion in deciding tactics of trial strategy, such as decisions concerning what evidence to present and which witnesses to call. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). However, if counsel's failure

---

[4] Defendant submitted the following along with the motion to remand filed in this Court: (1) photographs depicting the trailer during the repossession clearly depicting a V-nose trailer; (2) an affidavit from defendant's wife, Christina, stating that she took the photos, did not refuse to testify at trial, and would testify if called; (3) an affidavit from defendant's father stating that defendant sold him the flat-front trailer in 2014 and that he returned it after the October 7, 2016 hearing; (4) an affidavit from defendant stating that he sold the flat-front trailer to his father in 2014, asked for its return and received it after the October 7, 2016 hearing, and notified his counsel, who instructed him to leave the trailer at his house; and (5) an offer of proof from appellate counsel stating that he spoke with trial counsel and trial counsel admitted that he was aware the trailer had been sold to defendant's father, and that he knew about the photographs prior to trial but believed he could not admit them because Christina refused to testify.

[5] This Court denied defendant's motion to remand "for failure to persuade the Court of the necessity of a remand at this time," but indicated that "[d]enial of remand is without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar." *People v Kosinski*, unpublished order of the Court of Appeals, entered March 26, 2019 (Docket Nos. 345192 and 345193).

to present evidence deprives a defendant of a substantial defense, counsel is ineffective. *Id*. ("Defense counsel's failure to have admitted evidence critical to the issue . . . was likely outcome determinative); *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). A defendant can establish prejudice if there is "a reasonable probability that, without [the omitted evidence], at least one juror would have harbored a reasonable doubt about" the defendant's guilt. *Buck v Davis*, ___ US ___, ___; 137 S Ct 759, 776; 197 L Ed 2d 1 (2017).

## III. DISCUSSION

Ordinarily, parties are not permitted to expand the record on appeal. *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999). However, as noted, we may consider exhibits provided by a defendant pursuant to a motion for remand for a *Ginther* hearing. *Moore*, 493 Mich at 933; *Parkmallory*, ___ Mich App at ___ (slip op at p 2). We will consider defendant's affidavits and photographs solely for the purpose of determining whether a remand is warranted. Furthermore, defendant has provided us with copies of trial Exhibits 12 and 13, which were introduced into evidence at trial and were established as depicting the flat-front trailer. We deem the provision of Exhibits 12 and 13 not an expansion of the record despite their absence from the files provided to us, because plaintiff has not disputed their accuracy. It is readily apparent from the materials available to us that if defendant's proffered exculpatory evidence had been provided to the jury, it could cast serious doubt whether Lampela accurately identified which trailer he saw on defendant's property.

Importantly, the gravamen of defendant's argument is that the flat-front trailer *was* on his property in January 2017, but that it was in his father's possession as of the date of the August 8, 2016, court order. Lampela's identification of the trailer was the only disinterested evidence placing the flat-front trailer on defendant's property contemporaneously with defendant's allegedly perjured testimony. Thus, the jury might reasonably afford Lampela's identification disproportionate weight. However, as previously noted, Lampela testified that he had never repossessed a trailer before, which may suggest some unfamiliarity with trailer models. Therefore, we find a reasonable probability that exculpatory evidence, tending to plausibly show that Lampela was mistaken about which trailer was on defendant's property when he performed the repossession, would cause at least one juror to harbor a reasonable doubt as to whether defendant committed perjury regarding his knowledge of the trailer's whereabouts.

According to the affidavit of Fred Kosinski, defendant's father, defendant sold him the flat-front trailer in May 2014. Fred attached a copy of the "informal bill of sale" as proof. Fred further averred that he returned the trailer to defendant "within a few days after" the October 7, 2018, hearing, upon defendant's request. Fred averred that he "was prepared to testify at trial in this case" and could expound upon his other averments. Defendant's affidavit agreed with Fred's affidavit. Defendant further averred that he told his trial counsel "that the trailer was ready for Troy Kosinski to pick up" after Fred returned it. However, defendant averred that his trial counsel "told [him] to leave the trailer at [his] house and as long as [he] continued to make payments to Troy, it would not be an issue." According to an affidavit submitted byChristina Kosinski, defendant's wife, "[w]hen Bill Lampela came to tow the truck and the trailer, [she]

took several pictures, which . . . show the V-nose trailer." Four photographs are attached to her affidavit, all of which clearly depict a V-front trailer.[6] She further averred that she "never told [trial counsel] that [she] would not testify at trial."

Based on the photographs provided, there are clear differences between the two trailers when they are viewed side-by-side. However, there are also a number of similarities. Both are predominantly red, with a silver panel spanning the lower front around the tongue. Both have side doors in approximately the same location and two axles with silver fenders. However, the front of the "flat-front" trailer is not truly flat, but rather curves outward. The trailers are different lengths, and the V-nose trailer has a flat silver top whereas the flat-front trailer has a curved red top. The two trailers also have a conspicuously different distance between their axles and their side doors. Nevertheless, we do not think it impossible for a jury to reasonably conclude that Lampela *could* have mistaken a photograph of the flat-front trailer for the V-front trailer, given that he had no basis for comparison at trial, and he only saw the trailer on defendant's property once, almost two years previously.

Lampela testified that he performed the repossession pursuant to his job working for Chuck's Towing, and that he used a flatbed truck. Christina's photographs show a flatbed truck with "Chuck's Towing" prominently painted on the sides. Furthermore, the testimony established that defendant's pickup truck, which Lampela repossessed without issue on August 8, 2016, featured an extremely unusual and distinctive "sleeper cab" or half-length topper mounted to the truck's bed. That same truck is tied down on the "Chuck's Towing" flatbed in Christina's photos. In two of the photos, it appears that the V-nose trailer, which, as noted, is clearly a different model from the one in Exhibits 12 and 13, is hooked up to the flatbed but not being moved. No other trailers are present in Christina's photos.

Christina's affidavit and photographs tend to suggest a likelihood that Lampela had misidentified which trailer was depicted in the photograph he was shown at trial. If this evidence had been introduced at trial, it would have significantly bolstered defendant's position that the flat-front trailer was not at his property on the day he testified that he was unaware of its location. Furthermore, Lampela could have been cross-examined and asked to clarify his identification of the trailer. Testimony that Fred was in possession of the trailer until "a few days" later would further corroborate defendant's theory of his case. Furthermore, the testimony would explain why a police officer might have seen the flat-front trailer at one of defendant's properties on October 11, 2016. The perjury case against defendant turned significantly on the evidence that defendant denied knowing the whereabouts of a trailer that was, at the time of defendant's testimony, sitting on his property. Evidence that the trailer on his property in August 2016 was actually a completely different trailer than the one on his property in October 2016 would reasonably likely induce at least one juror to harbor reasonable doubt that defendant committed

---

[6] Plaintiff contends that the photographs clearly do *not* depict a V-front trailer. We presume plaintiff is mistakenly referring to the copies of Exhibits 12 and 13 instead of the photographs attached to Christina's affidavit. Alternatively, plaintiff is illustrating defendant's point that it is exceedingly difficult to tell one trailer from another without careful side-by-side inspection.

perjury. We recognize the prosecution's argument that the jury could still have chosen to believe the evidence that defendant was guilty, but that argument completely misapprehends the proper analysis for whether a remand for a *Ginther* hearing is appropriate.[7]

Thus, it is clear that the absence of the proffered evidence was prejudicial, and the remaining question is whether trial counsel's performance was objectively unreasonable. According to defendant's offer of proof on appeal, his trial counsel was aware of Christina's photographs. We are unable to imagine any sound trial strategy that would entail intentionally omitting Christina's photographs. However, also according to defendant's offer of proof on appeal, his trial counsel maintains that he asked Christina to testify, and Christina refused. Trial counsel therefore concluded that he would be unable to lay a foundation for the admission of the photographs. This assertion appears to conflict with Christina's affidavit, a fair reading of which is that Christina did not refuse to testify. However, if established to be true at an evidentiary hearing, trial counsel could have reasonably believed he would be *unable* to admit the photographs. Trial counsel might also have reasonably been unwilling to take the risk that Lampela would decline to authenticate Christina's photos.

We conclude that trial counsel's performance would likely have been objectively unreasonable and clearly prejudicial if trial counsel had *chosen* to omit Christina's photographs and testimony from evidence despite being aware of their existence. We cannot resolve the critical factual dispute of whether trial counsel indeed made a gravely wrong tactical decision, or whether trial counsel reasonably believed the photographs would be inadmissible. Additionally, defendant's offer of proof on appeal states that trial counsel failed or declined to explain why Fred was not called as a witness.[8] Fred's testimony could also have independently bolstered defendant's theory that he truly was unaware of the flat-front trailer's whereabouts on the day of his allegedly perjured testimony, but that defendant retook possession of the trailer a few days later. This unexplained omission also raises serious concerns regarding trial counsel's effectiveness.

---

[7] We also note that plaintiff relies in part on an exhibit introduced into evidence at trial, but plaintiff neither included the exhibit in the record nor attached it to plaintiff's brief. We remind the bench and bar that although there are exceptional circumstances under which we will permit expansion of the record, we will generally not entertain arguments premised on evidence not provided to us at all.

[8] We are troubled by defendant's final averment that he contacted his trial counsel to have Troy retrieve the trailer after Fred delivered it to plaintiff, and trial counsel instructed defendant to keep the trailer instead. Thus, defendant implicitly alleges that trial counsel may have advised defendant to violate a court order. However, we have not been provided with a copy of the court order on appeal or in the record, and the testimony does not clearly indicate the precise and entire contents of that order. Furthermore, it is not immediately clear to us whether any such advice has any bearing on the perjury charge. Finally, defendant elected not to testify at trial, so we decline to consider his affidavit beyond corroborating whether Fred's or Christina's testimonies might have benefitted him.

## IV. CONCLUSION

In Docket No. 345192, because no issue has been raised on appeal with respect to defendant's conviction of receiving and concealing stolen property, we affirm. In Docket No. 345192, we conclude that the trial court should be given the opportunity to evaluate the affidavits and photographs submitted in support of defendant's motion to remand and his claim that he was denied the effective assistance of trial counsel with respect to his conviction of perjury. Therefore, in Docket No. 345193, we remand for a *Ginther* hearing. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher