*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

HUNTER JAMES HUDGINS,

Defendant-Appellant.

UNPUBLISHED
December 19, 2024
10:20 AM

No. 366876
Kalamazoo Circuit Court
LC No. 2022-000698-FH

Before: BORRELLO, P.J., and MALDONADO and WALLACE, JJ.

PER CURIAM.

Defendant appeals by right his jury trial conviction of operating while impaired causing death, MCL 257.625(3), (4)(a).[1]  Defendant was also found guilty of operating as a minor with any bodily alcohol content, MCL 257.625(6), but he concedes guilt of this offense.  Defendant was sentenced to serve 3 to 15 years' imprisonment for operating while impaired causing death and was ordered to pay fines and costs for operating as a minor with any bodily alcohol content.  We affirm.

## I. BACKGROUND

This case arises from the tragic death of 19-year-old Bailey Broderick, a student at Western Michigan University.  On November 3, 2021, Broderick was given a ride back to her apartment from a rivalry football game against Central Michigan University by Trent Stoner, another Western student.  Stoner was traveling in the southbound lane of Fraternity Village Drive when he stopped his car toward the center of the road so that Broderick could exit his car, cross the street, and walk to her apartment.  At this point, it was dark outside, the street was not well lit, and the road had neither lane lines nor crosswalks.[2]  As Broderick exited Stoner's vehicle from the rear passenger side door, defendant was driving north on Fraternity Village Drive.  Broderick went around the back of Stoner's car while defendant was coming from the opposite direction, and when Broderick

---

[1] Defendant was found not guilty of moving violation causing death, MCL 257.301d(1).

[2] Lines and crosswalks have since been added to this street in response to this accident.

began to cross the street, she stepped out directly in front of defendant's vehicle. Defendant struck Broderick, killing her.

The speed limit on Fraternity Village Drive was 25 MPH, but multiple experts estimated that defendant was traveling between 30 MPH and 35 MPH. Defendant admitted the same. However, there was also expert testimony presented by both parties that no driver would have had enough time to avoid Broderick after she stepped out in front of the vehicle, even if traveling 25 MPH. This led to a dispute at trial regarding whether defendant's operation of his vehicle was the proximate cause of Broderick's death or if Broderick's action of stepping in front of the car was a superseding cause. Defendant admitted to having two drinks approximately 90 minutes before the accident, and his performance on the standardized field sobriety tests caused the police to believe he was under the influence of alcohol. Accordingly, he was arrested, and the police obtained a warrant to draw blood. The blood draw yielded a bodily alcohol content (BAC) of 0.048, and an expert estimated at trial that defendant's BAC was between 0.078 and 0.094 at the time of the accident.

The jury deliberated for more than a day before informing the court that it was hopelessly deadlocked. However, rather than declaring a mistrial, the court instructed the jury to continue deliberating and attempt to reach a unanimous verdict. The jury subsequently found defendant guilty as described earlier.

## II. JURY INSTRUCTIONS

Defendant argues that the trial court erred by improperly instructing the jury regarding proximate causation. We disagree.

"To preserve an instructional error for review, a defendant must object to the instruction before the jury deliberates." *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003). Because defendant did not raise this issue in the trial court, it is unpreserved. Ordinarily, questions of law involving jury instructions are reviewed de novo, and whether a trial court's decision concerning whether a jury instruction is applicable to the facts of a case is reviewed for abuse of discretion. *People v Gillis*, 474 Mich 105, 113;712 NW2d 419 (2006). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Bergman*, 312 Mich App 471, 483; 879 NW2d 278 (2015) (quotation marks and citation omitted). However, because this issue is unpreserved, it is reviewed for plain error; a plain error occurs if three requirements are "met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (citation omitted). Even if the three requirements are met, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763 (quotation marks, citation, and alteration omitted).

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Rodriguez*, 463 Mich 466, 472; 620 NW2d 13 (2000) (quotation marks and citation omitted). At the conclusion of a trial, the court is required to "instruct the jury as

required and appropriate . . . ." MCR 2.513(N)(1). MCR 2.512(B)(2) provides, "Before or after arguments or at both times, as the court elects, the court shall instruct the jury on the applicable law, the issues presented by the case, and, if a party requests . . . that party's theory of the case." The trial court "must properly instruct the jury so that [the jury] may correctly and intelligently decide the case. The instruction to the jury must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018) (quotation marks and citations omitted). The Michigan Court rules require the reading of Michigan's Model Jury instructions if the instructions "are applicable," the instructions "accurately state the applicable law, and" the instructions "are requested by a party." MCR 2.512(D)(2).

Defendant was found guilty of OWI causing death. MCL 257.625 governs OWI, and it provides in relevant part:

> (3) A person, whether licensed or not, shall not operate a vehicle on a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state when, due to the consumption of alcoholic liquor, a controlled substance, or other intoxicating substance, or a combination of alcoholic liquor, a controlled substance, or other intoxicating substance, the person's ability to operate the vehicle is visibly impaired. If a person is charged with violating subsection (1), a finding of guilty under this subsection may be rendered.

> (4) A person, whether licensed or not, who operates a motor vehicle in violation of subsection (1), (3), or (8) and by the operation of that motor vehicle causes the death of another person is guilty of a crime as follows:

> (a) Except as provided in subdivisions (b) and (c), the person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not less than $2,500.00 or more than $10,000.00, or both. . . .

Defendant argues that the court's instructions did not accurately describe the law governing the causation element provided in Subsection (4). Defendant argues that the court erroneously shifted the focus to whether Broderick's actions were a superseding cause and understated the prosecution's burden to show that Broderick's death was a natural consequence of defendant's operation of his vehicle.

The prosecution was not required to show any "causal link between defendant's [impairment] and the victim's death." *People v Schaefer*, 473 Mich 418, 431; 703 NW2d 774 (2005). Rather, regarding the causation element, the prosecution only needed to prove that "defendant's operation of the motor vehicle caused the victim's death." *Id*. at 434. "In criminal jurisprudence, the causation element of an offense is generally comprised of two components: factual cause and proximate cause." *Id*. at 435. Factual causation requires that a fact-finder "ask, 'but for' the defendant's conduct, would the result have occurred? If the result would not have occurred absent the defendant's conduct, then factual causation exists." *Id*. at 435-436. Proximate cause, on the other hand, requires the prosecution to show that the victim's death was "a 'direct and natural result' of the defendant's actions." *Id*. at 436. This test requires an inquiry into

"whether there was an intervening cause that superseded the defendant's conduct such that the causal link between the defendant's conduct and the victim's injury was broken." *Id*. at 436-437. Whether an intervening cause supersedes a defendant's conducted hinges on foreseeability, and ordinary negligence by the victim is generally foreseeable. *Id*. at 437, 439. "If, however, the intervening act by the victim or a third party was not reasonably foreseeable—e.g., gross negligence or intentional misconduct—then generally the causal link is severed and the defendant's conduct is not regarded as a proximate cause of the victim's injury or death." *Id*. at 437-438. "[G]ross negligence means wantonness and disregard of the consequences which may ensue, and indifference to the rights of others that is equivalent to a criminal intent." *Id*. at 438 (quotation marks and citation omitted).

Having laid out the law regarding causation, we now examine the court's instructions to ascertain whether they accurately reflected the law. As relevant to this issue, the court instructed the jury as follows:

> [The prosecution must prove] that the Defendant's operation of the vehicle caused the death of Bailey Broderick. To cause the death, the Defendant's operation of the vehicle must have been a factual cause of the death; that is, but for the Defendant's operation of the vehicle, the death would not have occurred.

> In addition, death must have been a direct and natural result of operating the vehicle.

> \* \* \*

> For counts one and two, if you find that Bailey Broderick was negligent, you may only consider that negligence in deciding whether the Defendant's conduct was a substantial cause of the accident.

> Whether a victim's conduct was a substantial cause of the accident is a question of reasonable foreseeability. Ordinary negligence is considered reasonably foreseeable and it is thus not a substantial cause of the accident.

> In contrast, gross negligence on the part of the victim is considered a substantial cause because it is not reasonably foreseeable.

> Gross negligence means conduct indicating that the victim was aware of the risks, but indifferent to the results.

These instructions accurately lay out the steps a fact-finder must take when assessing causation, as explained by our Supreme Court in *Schaefer*. Therefore, defendant cannot establish instructional error.

While the evidence was sufficient for a rational jury to find that Broderick was negligent, the court properly instructed the jury that Broderick's negligence could not break the causal chain unless she was so careless that her conduct rose to the level of gross negligence. Defendant had the opportunity to argue that she was, but the jury clearly found that she was not. Defendant engages in some mental gymnastics in an attempt to blame Broderick without framing her conduct

as an intervening cause. Defendant argues the accident was not the direct and natural result of his operation of the car because Broderick stepped out in front of the vehicle. In essence, defendant is attempting to argue that Broderick's conduct was the superseding cause without using that term so that he will not need to establish that she was grossly negligent. We reject defendant's attempt to cook Broderick's negligence into the proximate cause analysis without viewing her negligence as an intervening cause.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant has failed to establish that he was denied the effective assistance of counsel due to the failure to retain an expert in toxicology.

Claims of ineffective assistance of counsel present mixed questions of fact and law. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). Factual findings are reviewed for clear error and legal conclusions are reviewed de novo. *Id*.

At the outset, we note that defendant attempts to bolster his ineffective assistance claim using an affidavit from a proposed toxicology expert. However, because defendant did not move for a *Ginther*[3] hearing in this Court or in the circuit court, review is limited to mistakes apparent from the record. *People v Acumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Accordingly, we must reject defendant's attempt to impermissibly expand the record on appeal, and we decline to consider this affidavit. MCR 7.210(A); see also *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999) ("[I]t is impermissible to expand the record on appeal."). Defendant requested a *Ginther* hearing in his brief, but this request was not properly before us because he failed to file a motion pursuant to MCR 7.211(C)(1). See *People v Bass*, 317 Mich App 241, 276; 893 NW2d 140 (2016) (stating that the defendant's request for a *Ginther* hearing was not properly before the Court because it was made in his brief rather than "a proper motion to remand under MCR 7.211(C)(1)"). Therefore, defendant's improper request for a *Ginther* hearing does not permit consideration of this affidavit pursuant to MCR 7.211(C)(1)(a).

Based on the record before us, it seems trial counsel made the strategic choice to focus on his argument that Broderick's conduct was a superseding cause of the accident, describing Broderick's conduct as "the crux of this case." It appears to us that defense counsel did an excellent job presenting this defense. He elicited testimony during cross-examination of the prosecution's expert that a diligent driver who was following the speed limit could not have avoided the accident. Further, he presented compelling expert testimony regarding the issue. This expert utilized surveillance footage to reconstruct the accident, performed a field study to measure how much light there was, and offered testimony regarding perception/response time. Based on her efforts, the expert opined that there was nothing defendant could have done to avoid striking Broderick. It cannot be said that this strategy was ineffective because the jury initially reported being hopelessly deadlocked. Further, while he ultimately did not obtain an acquittal on the lead charge, defense counsel successfully persuaded the jury that Broderick's death was not caused by defendant's speed because the jury acquitted on the moving violation causing death charge.

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Additionally, defense counsel successfully procured a minimum sentence on the low end of the guidelines range.[4]

In hindsight, it is tempting to second-guess defense counsel's decision not to also offer testimony rebutting the prosecution's evidence of impairment in light of certain flaws in the prosecution's case. However, "[t]his Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Traver (On Remand)*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019) (quotation marks and citation omitted). Moreover, the record before us suggests that defense counsel did not neglect this angle. Defense counsel thoroughly cross-examined the prosecution's expert witness regarding the fact that he was given inaccurate information regarding defendant's weight, that his calculations were not tailored to defendant's body mass, that his analysis assumed that defendant was in a post absorptive state,[5] and that he did not have any background on whether defendant was a "seasoned drinker." Defense counsel also effectively cross-examined the officer who administered the field sobriety tests; he pointed out that defendant was facing the bright, flashing lights at the crime scene while his eye movement was being assessed, and he brought to light that the body camera video did not support her contention that defendant started one of the tests early.[6]

Affirmed.

/s/ Stephen L. Borrello
/s/ Allie Greenleaf Maldonado
/s/ Randy J. Wallace

---

[4] Defendant's three-year minimum sentence was 11 months below the top of his 29 to 57 months guidelines range.

[5] The expert assumed for his calculations that, at the time of the accident, defendant's intestines had completed absorbing the alcohol into his bloodstream, and defendant's body had begun eliminating the alcohol from his blood.

[6] Starting early when performing the "walk and turn" test was one of the three "clues" that indicated to the officer that defendant was impaired by alcohol.