*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
October 13, 2022

Plaintiff-Appellee,

v

No. 356440
Gogebic Circuit Court
LC No. 20-000095-FH

DANIEL J. SAARELA,

Defendant-Appellant.

Before: K. F. KELLY, P.J., and BORRELLO and CAMERON, JJ.

PER CURIAM.

Defendant Daniel J. Saarela appeals as of right his jury trial convictions of possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*); possession with intent to deliver less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*); possession of a dangerous weapon (metallic knuckles), MCL 750.224(1); possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b; felon in possession of a firearm (felon-in-possession), MCL 750.224f; and operating a motor vehicle without a valid license (OWL), MCL 257.904a. Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 15 to 30 years' imprisonment for his possession with intent to deliver methamphetamine conviction, 10 to 20 years' imprisonment for his possession with intent to deliver heroin conviction, 2 to 5 years' imprisonment for his possession of a dangerous weapon and felon-in-possession convictions, 2 years' imprisonment for his felony-firearm conviction,[1] and 90 days' imprisonment for his OWL conviction. We affirm.

---

[1] The two-year sentence for the felony-firearm conviction was ordered to be served consecutive and prior to the sentences for the remaining convictions.

## I.  BACKGROUND FACTS AND PROCEDURAL HISTORY

This case arises from an April 21, 2020 early-morning traffic stop and search of defendant's vehicle.  While on patrol at 2:30 a.m., Gogebic County Deputy Sheriff Cody Smith[2] observed a dark-colored SUV traveling in the opposite lane of traffic with a nonfunctioning headlight.  The SUV was outfitted with a brush guard that was "tilted forward."  About a week before the traffic stop, Deputy Smith had received an anonymous tip that defendant would be traveling through Gogebic County in a similar vehicle.  The tipster said that defendant would have with him a large amount of methamphetamine and that he was possibly armed.  Deputy Smith opened an investigation and found defendant's social media account that displayed an SUV with a brush guard installed improperly, causing it to tilt forward.

Deputy Smith executed a traffic stop of the vehicle.  During the stop, he observed a loaded syringe on the passenger-side floorboard.  He also noticed a "torch" sticking out of a black camera bag in the backseat.  On the basis of this evidence, Deputy Smith and other officers conducted a search of defendant's vehicle where they discovered a number of drug-related items.  These included:  six bindles[3] of suspected heroin, a bag of suspected methamphetamine, a methamphetamine pipe, two "hot rails,"[4] a dollar bill on top of one of the scales, a silver scoop, a "bubble,"[5] packaging material, a Pyrex container containing crumbs of partially burned suspected methamphetamine or heroin, multiple loaded and unloaded syringes, $100 bills, $20 bills, and prescription bottles containing marijuana.  Field and laboratory tests confirmed that the substances were methamphetamine and heroin.  The officers also discovered a .22-caliber revolver and a pair of metallic knuckles.

Deputy Smith interviewed Destiny Caudill, defendant's passenger, who admitted the pair had spent the day before the stop selling methamphetamine to various individuals in and around Gogebic County.  Defendant was arrested and, in a separate interview, he admitted to possessing the metallic knuckles, but denied knowledge of the revolver and the drug paraphernalia.  Defendant was convicted and sentenced as noted.  This appeal followed.

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises several arguments contending that defense counsel was ineffective.  We disagree with each.

---

[2] Deputy Smith is a member of the Gogebic Iron Area Narcotics Team ("GIANT").  GIANT is tasked with investigating narcotic-related crimes in the Gogebic County area.  Its ranks include officers from a number of local law enforcement agencies.

[3] A bindle is a small piece of aluminum foil or cellophane containing a small amount of heroin.

[4] A hot rail is a glass tube used for cooking methamphetamine.

[5] A bubble is a type of pipe used for smoking methamphetamine.

## A. STANDARD OF REVIEW

Because defendant did not raise the issue of ineffective assistance of counsel through a motion for new trial or a *Ginther*[6] hearing, our review is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). The question of ineffective assistance of counsel is "a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's factual findings are reviewed for clear error and questions of constitutional law are reviewed de novo. *Id*.

## B. LAW AND ANALYSIS

"The defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). To establish the right to a new trial premised on ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018), quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). It is presumed that defense counsel was effective, and a defendant must overcome the strong presumption that counsel's performance was sound trial strategy. *Trakhtenberg*, 493 Mich at 52.

### 1. DEPUTY SMITH'S TESTIMONY

Defendant first argues that he was denied the effective assistance of counsel because defense counsel did not object to what he alleges is Deputy Smith's "expert testimony" without first being qualified as an expert. Specifically, defendant challenges Deputy Smith's testimony that the weight of the drugs, the presence of drug paraphernalia such as scales, the packaging of the drugs, and the additional packaging materials found in the vehicle were indicative of defendant's intent to deliver the drugs to others.

Defendant is correct that the prosecutor did not move to qualify Deputy Smith as an expert in the area of street-level narcotics distribution and trafficking. However, defendant does not argue that Deputy Smith was not qualified to provide expert testimony, nor does he argue that the trial court would not have properly qualified Deputy Smith as an expert. Indeed, citing *People v Boyd*, 65 Mich App 11, 14-15; 236 NW2d 744 (1975), he acknowledges that an expert can be qualified on the basis of academic training or practical experience. Rather, defendant merely argues that because the prosecutor did not move under MRE 702[7] to qualify Deputy Smith as an expert in

---

[6] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[7] MRE 702 governs the admissibility of opinion testimony from an expert witness:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a

what constitutes possession with intent to deliver as opposed to simple possession, defense counsel's lack of objection to Deputy Smith's testimony did not constitute reasonable trial strategy.

While defense counsel could have objected to Deputy Smith's testimony under MRE 702, declining to raise an objection can often be considered sound trial strategy. A reviewing court should not substitute its judgment or second-guess defense counsel's strategy with the benefit of hindsight. *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). Defense counsel's theory was that defendant was merely present and that defendant happened to be associated with those who committed the crimes in this case. "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart*, 219 Mich App 38, 42; 555 NW2d 715 (1996). Defense counsel's failure to object to Deputy Smith's opinion of the evidence appears in line with counsel's trial strategy of implicating others in the distribution scheme and does not amount to ineffective assistance of counsel.

It is also noteworthy that defendant does not assert ineffective assistance of counsel with respect to defense counsel's failure to object to the testimony of Officer Josiah Hewitt, another officer involved in the search of defendant's vehicle. Like Deputy Smith, Officer Hewitt testified that he could distinguish simple possession from possession with intent to deliver and that, on the basis of what he observed—scales, packaging material, and substances wrapped in packaging material—he would characterize this case as one involving possession with intent to deliver. Although the officers' testimonies were similar, defendant's failure to assert error with respect to Officer Hewitt's testimony undermines his argument that defense counsel was ineffective.

## 2. CAUDILL'S TESTIMONY

Next, defendant argues that defense counsel was ineffective when counsel failed to raise an objection that Caudill's testimony was unreliable. In defendant's view, Caudill's testimony was unreliable because (1) she lacked personal knowledge of any drug transactions; and (2) Caudill "had worked out a dela [sic] in exchange for her testimony."[8]

MRE 602 states in part: "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony." According to defendant, Caudill lacked personal knowledge of any drug transactions by defendant,

---

fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

[8] On appeal, defendant impermissibly asks this Court to consider testimony from Caudill's plea hearing in her criminal case as evidence of Caudill's lack of credibility. This testimony was not presented during the trial court proceedings; therefore, this evidence is an improper expansion of the record, and we decline to consider it. See *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999).

and any assertion by Caudill that defendant conducted a drug transaction was on the basis of Caudill's "assumption" that a drug transaction had occurred.

In making this argument, defendant points to Caudill's statements that she had received drugs from another party and that she only assumed some of the paraphernalia belonged to defendant. Yet, in addition to these statements, Caudill also reported defendant's role in the drug transactions—specifically, that defendant would "weigh[] . . . up" the methamphetamine before each sale and Caudill would deliver it to the customer. Although Caudill's testimony could be construed as demonstrating some ambiguity as to the source of the drugs, it is the jury's role to determine "the weight of evidence or the credibility of witnesses." *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95 (1999). It is clear the jury resolved any ambiguity in favor of the prosecution, and we decline to second-guess that decision on appeal.

Regarding defendant's assertion that Caudill's credibility was damaged because she had "worked out" a deal with the prosecutor, Caudill testified that, in exchange for her testimony, the prosecutor would drop some of her pending charges. Although this may have undermined Caudill's credibility, it does not necessarily mean she lacked all credibility. Again, the *jury* is tasked with assessing a witness's credibility. *Id*. The fact that Caudill had an agreement with the prosecutor does not, by itself, demonstrate that Caudill's testimony was unreliable.

Because defendant's objections to Caudill's testimony are meritless, defense counsel was not ineffective for failing to challenge Caudill's testimony on these bases. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

### 3. MOTION TO SUPPRESS AND TO DISMISS

Defendant next argues that the traffic stop was illegal because Deputy Smith did not have reasonable suspicion to initiate the traffic stop. According to defendant, any evidence seized as a result of this purportedly illegal stop was fruit of the poisonous tree, and therefore inadmissible in the case against him. On this basis, defendant argues that defense counsel was ineffective for failing to move to suppress the evidence and to dismiss the charges.[9]

"[T]he Fourth Amendment protects citizens from unreasonable searches and seizures." *People v Stevens*, 460 Mich 626, 634; 597 NW2d 53 (1999); see also US Const, Am IV; Const 1963, art 1, § 11. Although an officer generally needs a warrant to search and seize, there are several exceptions to the warrant requirement. *People v Barbarich*, 291 Mich App 468, 472; 807 NW2d 56 (2011). One such exception is for an investigative or *Terry*[10] stop. *Id*. at 473. A routine

---

[9] Again, defendant's argument is premised on evidence not presented in the trial court. On appeal, defendant presents pictures of different dark-colored SUVs, which he contends are evidence the vehicle he was driving on April 21, 2020, had a working headlight. This evidence is an improper expansion of the record, and we decline to consider it. See *Powell*, 235 Mich App at 561 n 4.

[10] *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

traffic stop is a brief encounter that is similar in nature to a *Terry* stop. *People v Campbell*, 329 Mich App 185, 197; 942 NW2d 51 (2019).

"A traffic stop is justified if the officer has an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law," including "a violation of a traffic law." *People v Simmons*, 316 Mich App 322, 326; 894 NW2d 86 (2016) (quotation marks and citations omitted). The test is objective, *People v Champion*, 452 Mich 92, 98-99; 549 NW2d 849 (1996), and the stop is justified "even if the officer's subjective intent for stopping the car is based on other factors." *People v Kavanaugh*, 320 Mich App 293, 299; 907 NW2d 845 (2017). "Reasonable suspicion entails something more than an inchoate or unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *Champion*, 452 Mich at 98. "In order to justify an investigative stop, the police must have a particularized suspicion, based on objective observations, that the person stopped has been, is, or is about to engage in some type of criminal activity." *People v Coscarelli*, 196 Mich App 724, 727; 493 NW2d 525 (1992).

Deputy Smith testified that he stopped defendant's vehicle because he observed that the vehicle had a nonfunctioning headlight. In Michigan, it is illegal to drive in the dark without operational headlights. MCL 257.683(1); MCL 257.684(a). "A police officer on reasonable grounds shown may stop a motor vehicle and inspect the motor vehicle, and if a defect in equipment is found, the officer may issue the driver a citation for a violation of a provision of sections 683 to 711." MCL 257.683(2). An officer's subjective opinions are irrelevant to the question of whether police action was objectively justifiable. *Whren v United States*, 517 US 806, 812; 116 S Ct 1769; 135 L Ed 2d 89 (1996). Defendant's argument that the traffic stop was illegal lacks merit, and he was not prejudiced by defense counsel's failure to challenge the basis of the stop because the failure to raise a meritless argument does not amount to ineffective assistance of counsel. *Ericksen*, 288 Mich App at 201.

III. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the evidence was insufficient to support his convictions of possession with intent to deliver methamphetamine, possession with intent to deliver less than 50 grams of heroin, felony-firearm, and felon-in-possession. We disagree.

A. STANDARD OF REVIEW

Challenges to the sufficiency of the evidence are reviewed de novo. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013) (quotation marks and citation omitted). In reviewing the sufficiency of the evidence, this Court must draw reasonable inferences and assess witness credibility in favor of the jury verdict. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "[C]ircumstantial evidence and reasonable inferences arising from th[e] evidence can constitute satisfactory proof of the elements of a crime." *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010) (quotation marks and citation omitted; alteration in original).

## B. LAW AND ANALYSIS

### 1. POSSESSION WITH INTENT TO DELIVER

Defendant first challenges the sufficiency of his convictions of possession with intent to deliver methamphetamine and possession with intent to deliver less than 50 grams of heroin. In his view, the evidence did not demonstrate that he had the requisite intent to deliver.

To prove a defendant possessed an illegal substance with intent to deliver, the prosecution must demonstrate: "(1) that the recovered substance is a narcotic, (2) the weight of the substance, (3) that the defendant was not authorized to possess the substance, and (4) that the defendant knowingly possessed the substance intending to deliver it." *People v McGhee*, 268 Mich App 600, 622; 709 NW2d 595 (2005). At issue is the fourth element—whether defendant intended to deliver the illegal substances.

"Just as proof of actual possession of narcotics is not necessary to prove possession, actual delivery of narcotics is not required to prove intent to deliver." *People v Wolfe*, 440 Mich 508, 524; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). Therefore, intent to deliver may be inferred from circumstantial evidence, including "the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest." *Wolfe*, 440 Mich at 524.

Here, the prosecutor presented sufficient evidence for a jury to rationally infer that defendant intended to deliver methamphetamine and heroin. Police found a bag in the backseat of defendant's vehicle that contained a clear plastic zipper baggie with a large amount of a white, chalky, crystalline substance that tested positive for methamphetamine. In the bag was a tinfoil pouch containing six smaller tinfoil bindles containing a substance that tested positive for heroin. The bag also contained a digital scale and packaging material. Defendant had approximately $2,000 in cash in his wallet, and $600 in his pants pocket. The quantity and nature of this evidence was sufficient for the jury to reasonably conclude that defendant had the requisite intent to deliver methamphetamine and heroin.

Defendant's other insufficiency argument is unconvincing. In addition to challenging the physical evidence, defendant also challenges the propriety of Deputy Smith's and Caudill's testimonies as insufficient to show his intent to deliver methamphetamines and heroin. Having already determined that defendant's objections to the witnesses' testimonies were meritless, and that the jurors were free to decide for themselves the witnesses' relative credibility, we conclude that defendant's argument fails.

### 2. FELONY-FIREARM AND FELON-IN-POSSESSION

Defendant also contends there was insufficient evidence to convict him of felony-firearm and felon-in-possession. "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). And, a defendant is guilty of felon-in-possession where the

evidence shows: "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored under MCL 28.424." *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016). Defendant claims there was not sufficient evidence presented showing that defendant possessed the revolver.

Possession of a firearm can be actual or constructive. *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011). "Constructive possession exists if the defendant knew that [the contraband] was present and had the right to exercise control over it. Put differently, constructive possession exists if the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband." *People v Williams*, 268 Mich App 416, 421; 707 NW2d 624 (2005) (quotation marks and citation omitted).

Defendant argues that there "was no evidence presented that [defendant] could reasonably access the weapon from where he was at in the car." He also contends that he did not know the revolver was in the vehicle at the time of the traffic stop. Testimony was presented that the gun was inside the vehicle that defendant was operating at the time of the traffic stop. The loaded .22-caliber six-shot revolver was found in a cargo pocket behind the driver's seat of defendant's vehicle. Deputy Smith testified that when he asked defendant about the gun, defendant was able to accurately describe the gun; he explained that there are numerous styles of guns, yet defendant was able to describe the gun as "an older revolver." According to Deputy Smith, defendant's description of the revolver "hit it on the head." Deputy Smith took that to mean that defendant knew that the gun was in the vehicle, even though defendant denied that the gun was his and said that the gun belonged to someone else. A gun holster was found beneath the driver's seat that was consistent in size and shape to the revolver. Another officer testified that, in his opinion, defendant had quick access to the gun and would have been able to reach his arm around the driver's seat into the pocket on the back of the driver's seat. Additionally, Caudill testified that the day before, while the drug deliveries were being made, defendant was sitting in the backseat of the vehicle near where the revolver was found. Taken together, and viewed in the light most favorable to the prosecution, the circumstantial evidence was sufficient for a jury to reasonably infer that defendant was in constructive possession of the gun.

## IV. SENTENCING ISSUES

Defendant next challenges the trial court's scoring of offense variables (OVs) 14 and 15. According to defendant, there was no evidence presented at trial to support the trial court's scoring of these variables. Defendant also argues that his sentence was not proportionate and was unreasonable. We disagree.

## A. STANDARD OF REVIEW

"We review for clear error the trial court's factual determinations used for sentencing under the sentencing guidelines, facts that must be supported by a preponderance of the evidence." *People v Dickinson*, 321 Mich App 1, 20-21; 909 NW2d 24 (2017). "We will hold the trial court's factual determinations clearly erroneous only if we are left with a definite and firm conviction that the trial court made a mistake." *Id*. at 21. This Court reviews de novo the trial court's application and interpretation of statutory sentencing guidelines. *People v Jackson*, 487 Mich 783, 789; 790 NW2d 340 (2010).

B. LAW AND ANALYSIS

1. OFFENSE VARIABLE 14

OV 14 considers a defendant's role in a crime. MCL 777.44(1). The trial court scores 10 points under OV 14 when it finds a defendant to be "a leader in a multiple offender situation." MCL 777.44(1)(a). This Court has defined "leader" as " 'a person or thing that leads' or 'a guiding or directing head, as of an army or political group.' " *People v Rhodes*, 305 Mich App 85, 90; 849 NW2d 417 (2014), quoting *Random House Webster's College Dictionary* (2001). We defined the verb "lead" as, "guiding, preceding, showing the way, directing, or conducting." *Rhodes*, 305 Mich App at 90. In deciding whether a defendant was a "leader" for purposes of OV 14, "a trial court should consider whether the defendant acted first or gave directions or was otherwise a primary causal or coordinating agent." *Dickinson*, 321 Mich App at 22 (quotation marks and citations omitted). "The entire criminal transaction should be considered when scoring this variable." MCL 777.44(2)(a). "The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012), aff'd 495 Mich 33 (2014), overruled in part on other grounds in *People v White*, 501 Mich 160, 164 n 2; 905 NW2d 228 (2017).

In scoring OV 14, the trial court reasoned: "The facts are evident from this case that [defendant] does in fact constitute a leader, as he traveled from Minnesota into this county with drugs, packaging materials, scales, syringes, and so forth, and then went through both Gogebic and Ontonagon Counties distributing methamphetamine." There is no clear error in these factual conclusions because there was testimony presented at trial that defendant indeed brought drugs and other paraphernalia from Minnesota to distribute in the Gogebic County area. The trial court's conclusion that defendant was a "leader" for purposes of OV 14 was reasonable because there was testimony that defendant coordinated a group of individuals to assist in his distribution efforts.

On appeal, defendant argues the trial court erred in scoring OV 14 because there was evidence that other individuals played a far greater role in the distribution scheme than defendant. Defendant is correct that there was testimony that others coordinated some of the drug transactions. For example, Caudill stated that she arranged for defendant to sell drugs to some people she knew. Although there was evidence supporting defendant's assertion that others could be considered "leaders" in the distribution scheme, that does not necessarily diminish defendant's leadership role. Considering the entire criminal transaction, there was evidence that defendant directed and guided the distribution of the drugs. Therefore, the trial court did not err in scoring OV 14 at 10 points.

2. OFFENSE VARIABLE 15

OV 15 considers "aggravated controlled substance offenses." MCL 777.45(1). A trial court must assess 50 points if:

> The offense involved traveling from another state or country to this state while in possession of any mixture containing a controlled substance classified in schedule 1 or 2 that is a narcotic drug or a drug described in section 7212 or 7214 with the intent to deliver that mixture in this state. [MCL 777.45(1)(d).]

Methamphetamine is described in MCL 333.7214(c)(*ii*).

The trial court assessed 50 points for OV 15 because defendant "traveled from Minnesota and stayed at a motel in Ashland and then subsequently came into Gogebic County and Ontonagon County distributing methamphetamine." Defendant challenges this conclusion, stating there was no evidence showing he traveled from Minnesota to Michigan with drugs in his vehicle. During trial, Deputy Smith testified that he had received an anonymous tip that defendant would be traveling from Minnesota to Michigan with a large amount of methamphetamine using a dark-colored SUV. Defendant testified that he lived in Minnesota. Defendant was driving an SUV with Minnesota plates—and registered to defendant's mother at an address in Minnesota—when he was pulled over. Methamphetamine was seized during a search of the vehicle. On this record, it was reasonable for the trial court to conclude that defendant traveled from Minnesota with methamphetamine. To the extent defendant argues the trial court engaged in "impermissible judicial fact[-]finding," we note that the trial court is entitled to rely on "reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *Earl*, 297 Mich App at 109.

### 3. PROPORTIONALITY

Defendant next argues that his in-guidelines sentence was not proportionate and was unreasonable. The trial court thoroughly articulated its reasons for sentencing defendant within the guidelines for the conviction of possession with intent to deliver methamphetamine, and a within-guidelines sentence is presumptively proportionate. *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). Moreover, MCL 769.34(10) states: "[i]f a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." This Court must affirm his sentence because defendant has not identified any error in the scoring of the sentencing guidelines or directed this Court to any inaccurate information relied upon by the trial court when determining his sentence. See *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016); see also *People v Anderson*, 322 Mich App 622, 635-637; 912 NW2d 607 (2018), *People v Posey*, 334 Mich App 338, 357; 964 NW2d 862 (2020),[11] MCL 769.34(10).

---

[11] *Posey* is pending before our Supreme Court, which ordered the parties to brief the issue "whether the requirement in MCL 769.34(10) that the Court of Appeals affirm any sentence within the guidelines range, absent a scoring error or reliance on inaccurate information, is consistent with the Sixth Amendment, the due-process right to appellate review, and *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015)." *People v Posey*, 508 Mich 940, 940; 964 NW2d 362 (2021). However, until our Supreme Court issues a decision, this Court is bound by existing precedent, because "a Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals." MCR 7.215(C)(2).

## V. *BRADY* ISSUES

Next, defendant argues the prosecution violated his due-process rights under *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), because the prosecution did not correct Caudill's testimony regarding the terms of her plea agreement. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Defendant incorrectly argues this issue is preserved because he alleges a constitutional violation. Alternatively, he contends this issue is preserved because he moved this Court for remand to the trial court for an evidentiary hearing. However, to preserve an allegation of a *Brady* violation, a defendant must move the *trial court* for a new trial or for relief from judgment. *People v Burger*, 331 Mich App 504, 516; 953 NW2d 424 (2020). Thus, this issue is unpreserved because defendant did not move the trial court for a new trial or for relief from judgment. *Id.*

In general, "[t]his Court reviews due process claims, such as allegations of a *Brady* violation, de novo." *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016) (quotation marks and citation omitted). But because defendant did not preserve this issue, our review is for plain error affecting substantial rights. *Burger*, 331 Mich App at 516. "To establish plain error, the defendant must establish that (1) an error occurred, (2) the error was 'plain'—i.e., clear or obvious, and (3) the error affected substantial rights—i.e., the outcome of the lower court proceedings was affected." *Id.* (quotation marks and citation omitted). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Unger*, 278 Mich App at 235.

## B. LAW AND ANALYSIS

Defendant's arguments regarding this issue are based on the transcript of the plea hearing in Caudill's criminal case in which the terms of her plea agreement were explained to the trial court. According to defendant, the actual terms of Caudill's plea agreement differ from her testimony in this case explaining the plea agreement. In his view, the prosecutor's failure to correct Caudill's testimony in this case amounts to a due-process violation under *Brady*. This argument is meritless.

As we explained above, the transcript of Caudill's plea hearing was not evidence in this case. Thus, defendant's attempt to present the transcript as evidence on appeal amounts to an improper expansion of the record, which this Court cannot consider. *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999). Furthermore, if defendant thought the prosecutor committed a *Brady* violation when he failed to correct Caudill's testimony, then the proper course of action was to move the trial court for a new trial or for relief from judgment. *People v Cox*, 268 Mich App 440, 448; 709 NW2d 152 (2005). Indeed, it was then that defendant could have presented evidence of the purported *Brady* violation to the trial court, and defendant cannot circumvent this requirement by presenting on appeal evidence that was not admitted below.

On the record before us, there is no plain error demonstrating defendant's due-process rights were violated. Caudill testified at length about her plea agreement with the prosecutor and there is no evidence properly in front of this Court showing that this testimony amounted to a

violation of defendant's due-process rights. Indeed, defendant did not object to, or otherwise voice his disagreement towards Caudill's recitation of her plea agreement during the trial court proceedings.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Thomas C. Cameron